No. 01-629

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 126

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

DOUGLAS HEATH,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC-00-564,
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Gary E. Wilcox, Attorney at Law, Billings, Montana

      For Respondent:

         Honorable Mike McGrath, Attorney General; John Paulson, Assistant
Attorney General, Helena, Montana

         Dennis Paxinos, County Attorney; Rod Souza, Deputy County Attorney,
Billings, Montana

Submitted on Briefs:  August 22, 2003

Decided:  May 14, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Douglas Heath (Heath) entered guilty pleas to one count of theft, for violation of § 45-6-301(1)(a), MCA (1999), a felony, and one count of possession of burglary tools, a violation of § 45-6-205, MCA, a misdemeanor, and, on April 19, 2001, was sentenced to a term of ten years in the Montana State Prison, with two years suspended upon conditions, including payment of restitution. Heath appealed from the judgment, challenging the District Court's imposition of restitution on several grounds.

¶2 On February 5, 2002, this Court entered an order, *sua sponte*, indicating that "we have determined that the trial court did not consider and the parties have not addressed an issue that may be dispositive of this appeal." Our order referenced a footnote in this Court's opinion in *State v. Horton*, 2001 MT 100, 305 Mont. 242, 25 P.3d 886, issued June 12, 2001, which explained that "an apparent codification error" in the 1999 amendments to § 46-18-201, MCA, had raised a question about a sentencing court's continued authority to impose restitution as a condition of a suspended execution of sentence. *Horton*, ¶ 28, n. 3. We remanded for further consideration "[b]ecause the trial court and the parties did not consider this issue and because the footnote reference in *Horton* is dicta," and held the case in abeyance pending further proceedings in the District Court.

¶3 The District Court entered an order May 15, 2002, concluding that the 1999 statutory amendments had not eliminated a sentencing court's authority to impose restitution as a condition of a suspended sentence, and affirming Heath's original sentence. Following

2

supplemental briefing, we undertook review of all issues on appeal. We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

¶4 We address the following issues:

¶5 1. Did the District Court err by requiring payment of restitution as a condition of the suspended portion of a sentence imposed for a crime committed after October 1, 1999?

¶6 2. Did the District Court err in ordering restitution because the Presentence Investigation Report contained insufficient information?

¶7 3. Was the amount of restitution ordered by the District Court supported by substantial credible evidence?

¶8 4. Did the District Court err by failing to establish the amount, method and time of restitution payments?

## BACKGROUND

¶9 On June 5, 2000, Donald and Renate Cooper, en route on their move from Colorado to Washington, checked into a hotel in Billings. In the early morning hours of June 6, the Coopers were notified by hotel personnel that their vehicle had been broken into. Two suitcases and a bag containing clothes, books, a camera, miscellaneous items, and, particularly, a large jewelry collection, had been taken. The jewelry collection had been gifted to Renate Cooper (Cooper) by her mother, a resident of Germany who had accumulated the collection over a forty-year period. The collection consisted of over 120 pieces, including rings, bracelets, necklaces, pendants, broaches and earrings which held diamonds, pearls, sapphires, rubies, emeralds, quartz and other precious gems.

¶10 Police later arrested and charged Heath in connection with the crime. Part of the jewelry collection was recovered. Pursuant to a plea agreement, Heath entered guilty pleas to felony theft and misdemeanor possession of burglary tools, and a presentence investigation report (PSI) was thereafter completed, which included Cooper's detailed itemization of the jewelry collection. Cooper estimated the value of the entire collection, which was not separately insured, to be $120,000. The PSI included documentation of a claim which the Coopers filed against their insurer, State Farm, and State Farm's payment to the Coopers of $3,699.90 for various losses arising from the incident. The PSI recommended that Heath be ordered to pay restitution in the amount of $123,699.90, reimbursing the Coopers and State Farm for the respective amounts claimed. The PSI also noted that Heath had obtained his GED, that, though presently unemployed, Heath had been employed in construction and in restaurants, and that he had no assets and $1,000 in debts.

¶11 At the sentencing hearing, testimony by Cooper and from a jewelry expert, and other evidence regarding the value of the jewelry was offered. Heath testified that "I have always been employable here in town and made pretty good money" in the construction trade, stating he had made up to $24,000 a year. Heath stated that he accepted full responsibility for his actions, and testified that, upon release, he could make restitution payments of $100 or $200 per month. He indicated he had no debts other than a $1000 fine arising from another matter.

¶12 The District Court imposed a ten-year sentence to Montana State Prison, suspending two years "for the reason that I want you to have some additional opportunity to become

4

employed and pay restitution." The court imposed restitution in the amount of $22,500, and ordered a portion of Heath's prison wages to be applied to his restitution obligation. The court further ordered that restitution would be made "in monthly payments on a schedule to be supervised and regulated by the Adult Probation and Parole" office. From the judgment, Heath appeals.

## STANDARD OF REVIEW

¶13 This Court reviews a criminal sentence for legality. *State v. Pritchett*, 2000 MT 261, ¶ 6, 302 Mont. 1, ¶ 6, 11 P.3d 539, ¶ 6. Our review is confined to whether the sentence is within the parameters provided by statute. *Pritchett*, ¶ 6. We review a district court's findings of fact to determine whether the findings are clearly erroneous, including those findings regarding the amount of restitution. *State v. Hilgers*, 1999 MT 284, ¶ 6, 297 Mont. 23, ¶ 6, 989 P.2d 866, ¶ 6.

## DISCUSSION

¶14 ***1. Did the District Court err by requiring payment of restitution as a condition of the suspended portion of a sentence imposed for a crime committed after October 1, 1999?***

¶15 Heath contends that the District Court was without authority to impose restitution as a condition of the suspended portion of his sentence under the 1999 amendments to § 46-18-201, MCA. His argument is understood by comparing the 1997 and 1999 versions of this statute.

¶16 Section 46-18-201, MCA (1997), provided, in pertinent part, as follows:

> **Sentences that may be imposed.** (1) Whenever a person has been found guilty of an offense upon a verdict or a plea of guilty, the court may:

(a) defer imposition of sentence . . . . The sentencing judge may impose upon the defendant any reasonable restrictions or conditions during the period of the deferred imposition. Reasonable restrictions or conditions may include:

(i) - (xiv) [list of 14 restrictions and conditions]

(b) suspend execution of sentence. . . . The sentencing judge may impose on the defendant any reasonable restrictions or conditions during the period of suspended sentence. Reasonable restrictions or conditions may include any of those listed in subsection (1)(a).

. . . .

(2) In addition to any penalties imposed pursuant to subsection (1), if the court finds that the victim of the offense has sustained a pecuniary loss, the court shall require payment of full restitution to the victim as provided in 46-18-241 through 46-18-249.

The language in subsection (2) requiring payment of restitution "[i]n addition to the penalties imposed pursuant to subsection (1)" was a clear directive for sentencing courts to impose restitution in addition to other penalties or conditions imposed for either deferred or suspended sentences, because "subsection (1)" included the restrictions imposed for deferred sentences, listed under subsection (1)(a), as well as the restrictions imposed upon suspended sentences, listed under subsection (1)(b).

¶17     The 1999 Montana Legislature enacted House Bill 48, "An Act Generally Revising and Clarifying Certain Sentencing-Related Criminal Procedure Statutes," as Chapter 52, Laws of Montana (1999), which revised the structure of § 46-18-201, MCA.[1] The new provision stated, in pertinent part, as follows:

**Sentences that may be imposed.** (1)(a) Whenever a person has been found guilty of an offense upon a verdict or plea of guilty . . . a sentencing judge may defer imposition of sentence. . . .

_____

[1] Section 46-18-201, MCA, was also amended by Chapters 395, 432 and 505, Laws of Montana (1999), but these revisions are not at issue here, and therefore are not included in this opinion's reference to the "1999 amendments."

(b) . . . [I]mposition of sentence in a felony case may not be deferred in the case of an offender who has been convicted of a felony on a prior occasion, whether or not the sentence was imposed, imposition of the sentence was deferred, or execution of the sentence was suspended.

(2) Whenever a person has been found guilty of an offense upon a verdict of guilty or a plea of guilty . . . a sentencing judge may suspend execution of sentence. . . .

. . . .

(4) When deferring imposition of sentence or suspending all or a portion of execution of sentence, the sentencing judge may impose upon the offender any reasonable restrictions or conditions during the period of the deferred imposition or suspension of sentence.  Reasonable restrictions or conditions imposed under subsection (1)(a) or (2) may include but are not limited to:

(a) - (o) [list of 15 restrictions and conditions]

(5) In addition to any penalties imposed pursuant to subsection (1), if the sentencing judge finds that the victim of the offense has sustained a pecuniary loss, the sentencing judge shall require payment of full restitution to the victim as provided in 46-18-241 through 46-18-249.

Thus, the 1999 amendments to § 46-18-201, MCA, rearranged the provisions governing deferred and suspended sentences.  Former subsection (1)(a) became, in part, new subsection (1), and former subsection (1)(b) became, in part, new subsection (2).  Further, the 14 "restrictions and conditions" formerly listed as subsections (i) - (xiv) of subsection (1)(a), which constituted the "penalties" applicable to both deferred and suspended sentences, along with a 15th restriction added by Chap. 505, Section 1, Laws of Montana (1999),[2] were

---

[2]The additional sentencing restriction enacted by Chap. 505 was related to the reasonable restrictions or conditions imposed under subsection (1)(a) or (2)–"with the approval of the department of corrections and with a signed statement from an offender that the offender's participation in the boot camp incarceration program is voluntary, an order that the offender complete the boot camp incarceration program established pursuant to 53-30-403."  This restriction was codified as § 46-18-201(4)(m), MCA (1999).

7

rearranged as subsections (a) - (o) under new subsection (4). The mandatory restitution provision, formerly subsection (2), became new subsection (5).

¶18    However, the statute's internal cross-references to these subsections were not correspondingly modified by the legislation. Thus, new subsection (5) still mandated that restitution be imposed "[i]n addition to any penalties imposed pursuant to subsection (1)," despite the legislation's removal of the list of penalties from subsection (1) and placement of the list under new subsection (4).

¶19    Heath focuses on the recodification of former subsection (1)(b), which provided for suspended sentences, as new subsection (2). He argues therefrom that the 1999 amendments "seemingly mandate restitution, in addition to the other penalties imposed, only in cases in which a deferred sentence [is] imposed," because new subsection (5) still refers to "subsection (1)," which now provides only for deferred sentences, while suspended sentences are now provided for in subsection (2).

¶20    In considering Heath's argument, the District Court first noted that the "quandary raised by the recodification error . . . results from Subsection (5) being silent as to the suspended execution of sentences," and reasoned that because subsection (5) was not a prohibition of the imposition of restitution, the answer to the dilemma must be found by looking to other statutory provisions. The court then cited § 46-18-201(4)(n), MCA, which provides that a sentencing judge, when deferring imposition of sentence or suspending all or a portion of the execution of a sentence, may impose upon the offender:

>    (n) any other reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society[.]

The court noted that this Court had interpreted the identical provision in *State v. Ommundson*, 1999 MT 16, ¶ 11, 293 Mont. 133, ¶ 11, 974 P.2d 620, ¶ 11, wherein we stated:

> The "rehabilitation" and "protection of the victim and society" referenced in the sentencing statute must be read in the context of the charged offense. Section 46-18-202(1)(e), MCA. That is, the objectives are: (1) to rehabilitate the offender by imposing restitution or requiring treatment so that he or she does not repeat the same criminal conduct that gave rise to the sentence; and (2) to *protect* society from further similar conduct.

Emphasizing *Ommundson*'s reasoning that restitution served to fulfill the statute's objectives to rehabilitate the offender and protect society, the District Court concluded that these purposes were likewise served by Heath's restitution order. Further noting that *Ommundson* required a sentencing condition to have a correlation or connection to the underlying offense, the District Court concluded that a correlation existed between Heath's restitution requirement and his theft conviction.

¶21 The District Court's interpretation of § 46-18-201(4)(n), MCA, is consistent with our repeated interpretation of substantially similar predecessor sentencing provisions. In addition to *Ommundson*, we held in *State v. Blanchard* (1995), 270 Mont. 11, 889 P.2d 1180, that, despite the defendant's argument that restitution was expressly limited by statute to "offenders," the district court could nonetheless require restitution for crimes the defendant had not been charged with, and was granted immunity for, pursuant to sentencing authority granted by § 46-18-201(1)(a)(xii), MCA (1991), which authorized the court to impose "any other reasonable conditions considered necessary for rehabilitation or for the protection of

9

society." *See Blanchard*, 270 Mont. at 17, 889 P.2d at 1184.[3] Likewise, in *State v. Shaver* (1988), 233 Mont. 438, 449, 760 P.2d 1230, 1237, we approved the district court's imposition of a child support condition "for rehabilitative and restitution purposes" pursuant to the sentencing authority of § 46-18-201, MCA (1983 and 1985), which authorized "any other reasonable conditions considered necessary for rehabilitation." Again, in *Dahlman v. District Court* (1985), 215 Mont. 470, 473, 698 P.2d 423, 425, we affirmed a sentence requiring the defendant to make restitution to the county for medical expenses pursuant to § 46-18-201(1)(a)(ix), MCA (1981), which authorized imposition of "any other reasonable conditions considered necessary for rehabilitation or for the protection of society." Restitution in these cases was affirmed despite the absence of express statutory authorization.

¶22 Lastly, in *Horton,* we rejected the State's argument that a child support condition was authorized by § 46-18-202(1)(e), MCA (1997), which provided for conditions "reasonably related to the objectives of rehabilitation and the protection of the victim and society," because, citing *Ommundson*, we concluded that this restitution requirement was unrelated to Horton's DUI conviction. *Horton*, ¶ 28. However, unlike the sentence in *Horton*, Heath's restitution order is directly related to his theft and the victim's loss he caused thereby.

¶23 The above referenced holdings yield a consistent rule: a sentencing court is authorized to order restitution pursuant to sentencing statutes which allow reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or

---

[3]Dicta in *Blanchard*, unrelated to the precise issue here, has been overruled. *See Ommundson*, n.2.

society, when restitution is related to the crime for which a defendant is convicted. Given the District Court's ruling consistent therewith, we would ordinarily affirm the judgment on that basis. However, it remains necessary to determine whether the 1999 revisions to the sentencing statutes in any way disturbed these holdings.

¶24 We are mindful of the rules of statutory construction that guide our review of the 1999 revisions. "Statutory construction is a 'holistic endeavor' and must account for the statute's text, language, structure, and object." *S.L.H. v. State Compensation Mutual Insurance Fund*, 2000 MT 362, ¶ 16, 303 Mont. 364, ¶ 16, 15 P.3d 948, ¶ 16 (citing *United States Nat'l Bank v. Indep. Ins. Agents of Am., Inc.* (1993), 508 U.S. 439, 455, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402, 418). "Our purpose in construing a statute is to ascertain the legislative intent and give effect to the legislative will. Section 1-2-102, MCA." *S.L.H.*, ¶ 16.

¶25 Further, our inquiry must begin with the words of the statutes themselves. "The legislative intent is to be ascertained, in the first instance, from the plain meaning of the words used." *Western Energy Co. v. Dept. of Revenue*, 1999 MT 289, ¶ 11, 297 Mont. 55, ¶ 11, 990 P.2d 767, ¶ 11.

¶26 Subsection (5) of § 46-18-201, MCA (1999), provides that restitution must be ordered "[i]n addition to any penalties imposed pursuant to subsection (1)." A problem is immediately apparent from this plain reading: subsection (1) no longer imposes any penalties. All penalties formerly listed under subsection (1) in the 1997 statute–which were applicable to both deferred and suspended sentences–were placed by the 1999 amendments under new subsection (4). New subsection (1) now merely provides the time periods for

which an imposition of a sentence may be deferred. On its face, then, subsection (5) presents an ambiguity about the Legislature's intentions.

¶27 Subsection (5) is not the only Code provision addressing restitution. As the District Court noted, and as we recognized in *State v. Brown* (1994), 263 Mont. 223, 226, 867 P.2d 1098, 1100 (superseded on other grounds by § 46-18-241(1), MCA (1995)), there are "other statutes" which govern the imposition of restitution beyond the express authorization in § 46-18-201, MCA. Section 46-18-201(5), MCA (1999), acknowledges the same: "[T]he sentencing judge shall require payment of full restitution to the victim *as provided in 46-18-241 through 46-18-249*." (Emphasis added.) Indeed, the Code contains an extensive statutory framework governing restitution, and these provisions must also be considered. "We have many times stated that statutes must be read and considered in their entirety and the legislative intent may not be gained from the wording of any particular section or sentence, but only from a consideration of the whole." *Home Bldg. & Loan Ass'n of Helena v. Fulton* (1962), 141 Mont. 113, 115, 375 P.2d 312, 313; *see also State ex. rel. Holt v. District Court,* 2000 MT 142, ¶ 7, 300 Mont. 35, ¶ 7, 3 P.3d 608, ¶ 7.

¶28 Section 46-18-241, MCA (1999), provides:

> **Condition of restitution.** (1) As provided in 46-18-201, *a sentencing court shall require an offender to make full restitution to any victim* of the offense who has sustained pecuniary loss as a result of the offense, including a person suffering an economic loss as a result of the crime.

(Emphasis added.) This provision requires sentencing courts to require offenders to pay full restitution to "any victim," and thus, would conflict with Heath's assertion that restitution can be imposed only with deferred sentences. However, the directive here is prefaced by the

12

phrase "[a]s provided in 46-18-201." While it could be inferred that this provision is simply reiterating a requirement previously set forth in § 46-18-201, MCA, the ambiguity we have already noted in § 46-18-201(5), MCA, makes the intention of this statute uncertain as well.

¶29    Section 46-18-244(2), MCA, also mandates that restitution be imposed, and does so without reference to § 46-18-201, MCA:

> In determining the amount, method, and time of each payment, the court shall consider the financial resources and future ability of the offender to pay. *The court shall provide for payment to a victim of the full amount of the pecuniary loss caused by the offense.*

(Emphasis added.) This provision requires that a victim be paid the full amount of financial loss caused by the offense, and does not link the requirement to the type of sentence imposed. However, this language is placed within a statute which primarily sets the payment parameters for a restitution obligation imposed pursuant to other authority. Thus, we cannot conclude that the imposition of restitution for all sentences is mandated by this provision alone.

¶30    Section 46-18-237, MCA, authorizes garnishment of income received by an offender who is in the custody of the Department of Corrections for payment of the offender's restitution obligation. Because offenders who have received a deferred imposition of sentence are not placed in the custody of the Department of Corrections, Heath's interpretation–that restitution can be imposed on deferred sentences only–would render this provision completely meaningless. Ironically, this garnishment requirement was imposed upon the custodial portion of Heath's sentence.

13

¶31 Section 46-18-251, MCA, requires than an offender's payments must be divided and allocated, first to restitution, and then to the payment of charges, supervisory fees, costs and fines which are imposed upon all felonies, including *suspended sentences*. *See* § 46-18-251(2), MCA, and the provisions referenced therein. Under Heath's interpretation, these provisions, insofar as they govern the payment of restitution by offenders with suspended sentences, would also be rendered meaningless. "Statutes must be so construed that no word therein is to be considered meaningless, if such a construction can be reasonably found that will give it effect." *In re Wilson's Estate* (1936), 102 Mont. 178, 193, 56 P.2d 733, 736. "We are required to avoid any statutory interpretation that renders any sections of the statute superfluous and does not give effect to all of the words used." *State v. Berger* (1993), 259 Mont. 364, 367, 856 P.2d 552, 554.

¶32 Section 46-18-201(1)(b), MCA, prohibits a second-time felony offender from receiving a deferred sentence. Thus, under Heath's interpretation, a sentencing court would be authorized to order restitution for victims of first time felony offenders receiving a deferred sentence, but would be prohibited from ordering restitution for victims of repeat felony offenders. This is simply a consequence without reason. Indeed, it reaches the heights of illogicality. It has long been a rule of statutory construction that a literal application of a statute which would lead to absurd results should be avoided whenever any reasonable explanation can be given consistent with the legislative purpose of the statute. *See Chain v. Dept. of Motor Vehicles*, 2001 MT 224, ¶ 15, 306 Mont. 491, ¶ 15, 36 P.3d 358,

¶ 15; *Darby Spar. Ltd. v. Dept. of Revenue* (1985), 217 Mont. 376, 379, 705 P.2d 111, 113; *State v. Millis* (1927), 81 Mont. 86, 96, 261 P. 885, 889.

¶33    In sum, the ambiguity in the plain wording of subsection (5) of § 46-18-201, MCA; the resulting uncertain directives for payment of restitution for all victims in § 46-18-241(1), MCA, and § 46-18-244(2), MCA; the potential rendering of § 46-18-237, MCA, and § 46-18-251(2), MCA, as meaningless; and the potentially absurd consequences of the application of § 46-18-201(1), MCA, beckon us loudly to look beyond the words of the statutes and to inquire as to the Legislature's purpose in enacting the 1999 amendments.  It is abundantly clear that proper interpretation of the statutes here requires more than "simply to ascertain and declare what is in terms or in substance contained therein."  Section 1-2-101, MCA. "[W]hen the plain meaning of a statute is subject to more than one reasonable interpretation . . . we will examine the legislative history to aid our interpretation."  *State v. Legg,* 2004 MT 26, ¶ 27, 319 Mont. 362, ¶ 27, 84 P.3d 648, ¶ 27.

¶34    House Bill 48 was introduced into the 1999 legislative session by Rep. Dan McGee. The testimony presented by McGee and other witnesses to the legislative committees is most enlightening to the issue raised here:

> **Before the House Judiciary Committee**
> **January 7, 1999**
>
> (By Rep. McGee): During the interim, there was established a correctional standards and oversight committee made up of eight Legislators. . . .  After meeting several times, it was clear that both Title 45 and 46 are very difficult for the people of Montana to actually track and work through; particularly Title 46, and particularly, Title 46, Chapter 18.
>
> . . . .

15

Our committee contracted with a local attorney by the name of Lou Foust to actually do the research and redraft of Title 46, Chapter 18.

. . . .

If you take the bill, and don't try to read anything, but just thumb through it for a moment, you are going to see two things: you're going to see a whole lot of language that's stricken, and you're going to see a whole lot of language that's underlined. *It's basically the same. All that's happened is that the organization of Title 46 [Chapter] 18 has been reworked, and so that the language is taken from one place and put over to another place . . . and that's basically what the bill does.*

(By Lou Foust): As Rep. McGee explained it, [Title] 46 [Chapter] 18 has been confusing and rife with cross-references and internal references. My job was to clarify this and streamline the statute so that its workable, so you don't have to go to four separate sections to understand where the bill is going and what the statute means. *Basically, my job, in a nutshell, was to make sensible changes, not to mess with or deal with the substantive areas of the statute. . . .* [D]espite the fact that I work as a public defender and generally I work as a defense attorney, it was my goal, my objective, to see that there was no policy. *. . .* And to avoid that *it was checked by members of the Attorney General's office to make certain that we didn't set policy. Ultimately . . . no substantive changes are mentioned in this statute.*

(By John Connor, Attorney General's office): [W]e [Attorney General's office] are in agreement that *there are no substantive changes in this bill* that ought to be considered by the Legislature.

(By Rep. McGee, in closing): This is a good bill, it's a clean bill, and *it is a housekeeping matter.*

**Before the Senate Judiciary Committee**
**March 3, 1999**

(By John Connor): *There is not anything substantive in here or that might be considered substantive.* We've [Attorney General's office] gone through every aspect of this bill. Although its difficult to track, when you see deleted portions of the current statute, they are somewhere else or they are summarized somewhere else so that they read more accurately.

Mont. H. Jud. Comm., *Hearing on H.B. 48*, 56th Leg., Reg. Sess. 1 (Jan. 7, 1999); Mont. S. Jud. Comm., *Hearing on H.B. 48*, 56th Leg., Reg. Sess. 1 (Mar. 3, 1999) (emphasis added). Further, House Bill 48, as enacted, contained several "whereas clauses" setting forth the purpose of the bill, including the following:

> WHEREAS, the [Correctional Standards and Oversight] Committee contracted for a review of Title 46, chapter 18, MCA, sentencing statutes; and

> WHEREAS, the Committee found that the statutes providing for sentencing and judgment regarding criminal procedures are confusing and rife with cross-references, internal references, and inconsistent terminology that make the statutes difficult to read and understand; and

> WHEREAS, the Committee recommended that a bill be drafted to amend Title 46, Chapter 18, MCA, *to make nonsubstantive changes to clarify and streamline the statutes* to eliminate contradictions, confusion, inconsistent terminology, and excessive internal references.

Chapter 52, Laws of Montana (1999) (emphasis added). Thus, the Legislature's purpose was simply to "clarify" and "streamline" the sentencing statutes, and, as repeatedly articulated throughout the legislative process, to make no substantive changes to the law whatsoever. Needless to say, elimination of a sentencing court's authority to impose restitution as a condition of suspended sentences would constitute a substantive and significant change in the law. However, it cannot be disputed that the Legislature neither considered nor intended any such change. While we are to "presume that the legislature, in adopting an amendment to a statute, intended to make some change in existing law," *Foster v. Kovich* (1983), 207 Mont. 139, 144, 673 P.2d 1239, 1243, this rule of construction is only what it is–a presumption. Here, that presumption has been irrefutably rebutted by clear evidence from legislative history.

17

¶35 A final interpretational guide is important: "The reviewing Court must adopt a construction of the statute which renders the statute constitutional in preference to one which renders it invalid." *State v. Helfrich* (1996), 277 Mont. 452, 454, 922 P.2d 1159, 1160. Article II, Section 28, of the Montana Constitution provides:

> **Criminal justice policy–rights of the convicted.** Laws for the punishment of crime shall be founded on the principles of prevention, reformation, public safety, and *restitution for victims.*

(Emphasis added.) The phrase "restitution for victims" was added to this constitutional provision by way of referendum approved in 1998 and effective on July 1, 1999, and requires criminal statutes to be founded upon principles of restitution for victims of crime. Adopting Heath's interpretation, and thereby eliminating the sentencing court's ability to impose restitution upon an entire class of sentences, would facially conflict with the requirement of Article II, Section 28, that law for the punishment of crime be founded upon the principle of restitution for victims.

¶36 Therefore, in consideration of these multiple guides to interpretation, including review of legislative history, we conclude that the reference made in subsection (5) of § 46-18-201, MCA (1999), to "the penalties imposed pursuant to *subsection (1)*" was a simple codification error which was not intended to make any change in the substance or effect of the statute. The re-codification of the statute under House Bill 48 resulted in a cross reference error which was completely inconsistent with clear legislative intent. We further conclude that it was the Legislature's full intention that subsection (5) cross-refer, not to subsection (1),

18

but to subsection (4), which contains all of the penalties and conditions which may be imposed for both deferred impositions of sentences and for suspensions of sentences.

¶37 This Court will not permit legislative intent to be thwarted, and the whole of the judiciary's sentencing authority to be undermined, by a mere scrivener's error. Further, the interpretation of § 46-18-201(5), MCA (1999), we have adopted today will give effect to the other statutory provisions providing for and implementing the payment of restitution to victims under suspended sentences which would otherwise be rendered meaningless or uncertain.

¶38 Having determined that the Legislature did not eliminate the express authority of sentencing courts to impose restitution for any sentence, we also conclude that it did not disturb the line of cases, referenced herein, which have interpreted the sentencing provision now set forth as § 46-18-201(4)(n), MCA (1999). Sentencing courts remain authorized to impose restitution when "considered necessary for rehabilitation or for the protection of the victim or society," as held by the District Court, when there is an appropriate correlation to the offense committed.

¶39 The District Court's imposition of restitution herein is affirmed.

¶40 *2. Did the District Court err in ordering restitution because the Presentence Investigation Report contained insufficient information?*

¶41 Heath argues that the District Court erred in imposing restitution because the PSI contained insufficient information to satisfy § 46-18-242(1), MCA (1999), which provides:

> (1) Whenever the court believes that a victim of the offense may have sustained a pecuniary loss as a result of the offense or whenever the prosecuting attorney requests, the court shall order the probation officer,

19

restitution officer, or other designated person to include in the presentence investigation and report:

(a) documentation of the offender's financial resources and future ability to pay restitution; and

(b) documentation of the victim's pecuniary loss, submitted by the victim . . . .

Although acknowledging that the PSI included "some" of this information, Heath contends that it was insufficient to satisfy the statute, citing our holdings in *Brown*, *Hilgers* and *Pritchett* that the respective presentence reports in those cases were deficient. Heath asserts that his PSI inadequately documented his resources, his future employability and ability to pay restitution and the victim's pecuniary loss.

¶42 Heath's PSI noted that he was currently unemployed and without income, but that he "has worked construction and in restaurants in the past." It indicated that he had completed 11 grades in school and had also obtained a GED. It noted that he had no assets, had debts of $1,000, and had no support obligation for his three children. The report stated that Heath had family in the Billings area and that Heath should be required to "secure and maintain full-time, legitimate employment."

¶43 In *State v. Flanagan*, 2003 MT 123, ¶ 39, 316 Mont. 1, ¶ 39, 68 P.3d 796, ¶ 39, we approved a PSI with similar information, under the same statutory requirements:

§ 46-18-242, MCA (1997), requires "documentation" of the resources and loss. It does not require separate documents. The presentence investigation report documents Flanagan's income of $ 629 per month from social security, his assets of $ 6,000 and debt-free status, and the victim's treatment costs not covered by insurance of $ 4,945.31 for counseling, medications and a hospital stay. We conclude the documentation contained in the presentence investigation report is sufficient with regard to his income and assets and the victim's existing pecuniary loss.

We approved a similar documentation of resources and ability to pay in *State v. Dunkerson*, 2003 MT 234, ¶ 19, 317 Mont. 228, ¶ 19, 76 P.3d 1085, ¶ 19, where the PSI listed assets of $2,500, debts of $7,000, income of $1,000 per month and noted that "Dunkerson was currently capable of paying restitution."

¶44 The deficiencies noted in the respective PSI reports discussed in *Brown*, *Hilgers* and *Pritchett* were not present in Heath's PSI. Further, we conclude that Heath's PSI sufficiently documented his resources, future employability and ability to pay, as it was comparable to the reports which we approved in *Flanagan* and *Dunkerson*.

¶45 Heath also contends that the PSI insufficiently documented the victim's claimed pecuniary loss of $120,000. He relies on our holding in *Pritchett,* ¶ 11, that evidence later introduced at the sentencing hearing cannot cure an insufficient PSI where there is no agreement between the parties for restitution to be determined by the sentencing court. He notes that the parties had no such agreement here.

¶46 Heath's PSI stated that restitution in the amount of $120,000 was owed to Cooper and $3,699.90 was owed to State Farm for payments made to Cooper. Attached to the PSI was a three-page itemization of missing jewelry prepared by Cooper which noted that the value of the entire collection was $120,000, a victim impact statement which also noted the value of the entire collection, a financial loss statement by Cooper itemizing the items which were missing other than the jewelry and valuing those items at $2,500, and a letter with supporting documents from State Farm.

21

¶47 Heath correctly notes that evidence concerning the precise value of the missing items of jewelry was not offered until the sentencing hearing, when testimony was given by an appraiser. However, we conclude that the substantial information set forth in the PSI and the attachments thereto satisfied the requirement to provide "documentation of the victim's pecuniary loss, *submitted by the victim . . . .*" Section 46-18-242(1)(b), MCA (emphasis added). Therefore, we conclude that Heath's PSI satisfied all statutory requirements.

¶48 *3. Was the amount of restitution ordered by the District Court supported by substantial credible evidence?*

¶49 The District Court ordered Heath to pay restitution in the amount of $22,500. Heath briefly argues that this amount was not supported by substantial credible evidence. We review a district court's findings of fact regarding the amount of restitution to determine if they are clearly erroneous. *Hilgers*, ¶ 6.

¶50 At the sentencing hearing, Hal Hendrickson, a qualified expert in jewelry appraisal, testified that the total replacement value of the 54 pieces of jewelry which had been recovered was $31,400, and that the fair market value of that jewelry was half that amount, or $15, 700. Hendrickson did not offer an opinion regarding the value of the 75 pieces which were still missing. Renate Cooper also testified concerning the value of the jewelry.

¶51 The District Court concluded that, although the evidence did not support valuing the entire collection at $120,000, "Ms. Cooper's testimony is very credible regarding the items that remain missing . . . particularly based upon her ability to describe in detail each of those items and the photographs that support that description . . . ." Citing Cooper's testimony, and making comparison to the expert testimony offered by Hendrickson about the value of

22

the recovered items, the District Court concluded that the fair market value of the missing items was $22,500. Heath argues this figure is "nothing but conjecture."

¶52  We conclude that the District Court's valuation was not clearly erroneous. First, the District Court was careful to calculate restitution based upon a fair market value of the missing items, *see Pritchett,* ¶ 24, and not replacement value, acknowledging that "I do not, by any means, necessarily think that this amount of money will make Ms. Cooper whole." Cooper gave detailed testimony, with photographs, about the 75 missing items. Hendrickson offered expert testimony about valuation based upon the 54 recovered items, against which the missing items could be compared. The court found Cooper's testimony "very" credible. "The credibility of witnesses and the weight to be given their testimony are determined by the trier of fact, whose resolution of disputed questions of fact and credibility will not be disturbed on appeal." *Hilgers*, ¶ 12. We affirm the amount of restitution ordered by the District Court.

¶53  *4. Did the District Court err by failing to establish the amount, method and time of restitution payments?*

¶54  Heath argues that the District Court erred by failing to set the "amount, method, and time of each payment to the victim," as required by § 46-18-244(1), MCA. In the judgment, the District Court ordered Heath to pay restitution "on a schedule to be supervised and regulated by the Adult Probation and Parole Field Services."

¶55  The State acknowledges that the court's order did not "technically comply" with the statute, but argues that the purposes of the statute were nonetheless accomplished. However, we have repeatedly required compliance with this statutory provision. *See Brown*, 263 Mont.

23

at 227, 867 P.2d at 1101; *Prichett*, ¶ 16; and *Flanagan*, ¶ 44. Thus, we reverse this portion of the judgment and remand for an amendment properly addressing the time and method of Heath's restitution payments.

¶56    Affirmed in part, reversed in part, and remanded for further proceedings.


/S/ JIM RICE


We concur:


/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON