No. 05-427

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 309N

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

TIMOTHY TISCHLER,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                      In and For the County of Gallatin, Cause No. DC 03‒153
                      Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                R. Stan Peeler, Peeler Law Office, Bozeman, Montana

        For Respondent:

                Hon. Mike McGrath, Attorney General; Mark W. Mattioli,
                Assistant Attorney General, Helena, Montana

                Marty Lambert, Gallatin County Attorney; Todd Whipple,
                Deputy County Attorney, Bozeman, Montana

Submitted on Briefs:  April 5, 2006

Decided:  November 29, 2006

Filed:

_____
                             Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent.  It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result in this Court's quarterly list of nonciteable cases published in the Pacific Reporter and Montana Reports.

¶2     Timothy W. Tischler appeals from the judgment and sentence entered by the Eighteenth Judicial District Court, Gallatin County, on his convictions of the felony offenses of theft and theft of identity.  We affirm.

¶3     The restated issue on appeal is whether the District Court erred in ordering restitution in the amount of $28,781.26.

## BACKGROUND

¶4     The State of Montana charged Tischler by information with the felony offenses of theft and theft of identity in May of 2003.  The information subsequently was amended in a manner unrelated to the issue on appeal.  According to Chief Deputy Gallatin County Attorney Todd S. Whipple's affidavit of probable cause, the investigation leading to the charges occurred as follows.  Steven Vejtasa, part owner of the cellular telephone business Wireless Solutions, learned that a payment intended for Wireless Solutions had been deposited into a Heritage Bank account, although Wireless Solutions had its checking account with First Security Bank.  Thereupon, Vejtasa reported his suspicion that two former employees—Tischler and Raynaldo Thompson—had diverted funds from the business.

2

Subsequently, Bozeman Police Detective Charley Gappmayer discovered a Heritage Bank account under the name "Timothy W. Tischler DBA Wireless Solutions," for which Tischler and Thompson were the authorized signatories. Gappmayer learned $28,781.26 in checks payable to Wireless Solutions had been deposited into the Heritage Bank account, along with other amounts including unexplained cash deposits. In addition, Gappmayer's investigation revealed Thompson had used Vejtasa's personal information, without permission, to obtain two credit cards that had balances totaling approximately $15,000. Gappmayer also discovered Tischler had used one of the credit cards to reserve a rental car.

¶5    Tischler ultimately pled no contest to the charges. The District Court accepted the plea and ordered a presentence investigation report (PSI). The PSI recommended that Tischler pay $60,558.14 in restitution to Vejtasa and to Wireless Solutions' previous owner, Craig Del Grande. The amount represented the deposited checks, unexplained cash deposits and credit card charges, minus a credit and payments to the credit card accounts and a deposit from one of the credit card accounts to the Heritage Bank account.

¶6    Thompson having also entered a no contest plea regarding charges against him, the District Court held a consolidated sentencing hearing for both Thompson and Tischler. Gappmayer, Vejtasa, and Del Grande testified for the State, and the State entered several exhibits into evidence, including images of the checks deposited into the Heritage Bank account and Gappmayer's summary of that account. Thompson and certified public accountant James Simons testified for the defense. Among other things, Thompson and Simons discussed certain amounts paid from the Heritage Bank account, allegedly in relation

3

to Thompson's telephone refurbishing "side business"—also called, like the victims' business—Wireless Solutions.

¶7 The State represented that, contrary to the PSI recommendation, it was not seeking restitution for $19,591 in unexplained cash deposits because it could not establish those amounts were stolen from Wireless Solutions. Moreover, the State did not seek restitution from Tischler regarding the credit cards because he only used one credit card to reserve a rental car and subsequently paid for the car rental by other means.

¶8 The District Court deferred imposition of Tischler's sentence for six years, subject to certain conditions. In addition, the court ordered that Tischler pay $28,781.26 in restitution, for which Tischler would be jointly and severally liable with Thompson.

¶9 Tischler appeals. We set forth additional facts below.

**STANDARD OF REVIEW**

¶10 We review a criminal sentence for legality. We review a district court's findings of fact, including those regarding the amount of restitution in a criminal sentence, to determine whether they are clearly erroneous. *State v. Heath*, 2004 MT 126, ¶ 13, 321 Mont. 280, ¶ 13, 90 P.3d 426, ¶ 13 (citations omitted). A finding is clearly erroneous if it is not supported by substantial evidence, the district court misapprehended the effect of the evidence, or a review of the record leaves this Court with the definite and firm conviction that the district court made a mistake. The standard is not whether the evidence could support a different finding; nor does this Court substitute its judgment for the finder of fact regarding the weight of the evidence or witness credibility. *See In re T.L.*, 2005 MT 256, ¶ 18, 329 Mont. 58, ¶ 18, 122

4

P.3d 453, ¶ 18 (citations omitted).

## DISCUSSION

¶11    **Did the District Court err in ordering restitution in the amount of $28,781.26?**

¶12    Tischler does not dispute that the checks totaled $28,781.26. He also does not advance authority or argument for the proposition that the checks do not constitute substantial credible evidence. Tischler argues, however, that the appropriate amount of restitution is lost profits based on the diversion of customers from the victims' business, and Simons' testimony established that amount to be $12,687.81.

¶13    Simons prepared a restitution spreadsheet, which was entered into evidence. He accepted the PSI's bank account-related figures that the deposited checks totaled $28,781.26 and the unexplained cash deposits totaled $19,591, for a sum of $48,372.26. Simons testified he then reviewed Tischler and Thompson's claims that most of the checks drawn on the Heritage Bank account and certain credit card charges were related to Thompson's side business, determining several of those claimed expenses were "not obviously . . . related" to the side business. Ultimately, he concluded $35,684.45 was related to the side business, subtracted that amount from the PSI's bank account-related figure of $48,372.26, and opined the appropriate amount of restitution was $12,687.81.

¶14    On cross-examination, Simons testified he had not reviewed any "books" from Thompson's side business because no such "books" existed. Simons also stated he did not correlate any check deposited into the Heritage Bank account with a specific purchase of product for the side business, but had performed his analysis on an "overall basis." In

5

addition, he admitted he did not know if the amounts spent on product and the deposited checks were connected. The deputy county attorney inquired whether Simons "[could] tell me right now how the numbers, the $31,000 [referring to Simons' adjusted calculation of outgoing Heritage Bank checks allegedly spent on product], is connected to $28,000 [referring to the deposited checks in the Heritage Bank account], other than the fact that they're both Wire—or dealing with cell phones[.]" Simons responded "I cannot tell you that[,]" and reiterated "[n]o, I can't."

¶15 With regard to a sentencing recommendation, Tischler's counsel stated the "trouble" in determining restitution was whether the victims' business lost approximately $28,000 or "something less than that." Counsel admitted "we don't have any numbers or none have been demonstrated at this point," but asserted "there would have been some product cost" if the victims' business—rather than Tischler and Thompson—had gotten approximately $28,000 in checks from customers.

¶16 Before sentencing Tischler, the District Court observed the case had been pending a very long time, due in part to the financial proof that was required, and many questions remained unanswered because of "minimal bookkeeping and a total absence of records in some respect." The court also stated that

> I think in order to further consider what was done with the money . . . that the only way to make actual sense of that would have been to have the backup documentation to support the amounts that Mr. Simons was trying to consider as part of the business enterprises that were being conducted with or without consent of the owners of the store. There was no evidence about what happened to any of the products that were purchased that Mr. Simons identified. I don't know, when this came down, what happened to those things. I don't know if they were credited or kept, or thrown away. I don't

6

know, because there are no records, of who was paying the checks for what. I mean, we know the source of the payment because of the checks themselves, but there's no receipt for the work that was done or the product that was sold to truly identify by the Court fairly that those items were not for new products sold through the store, and that they were instead for repair work, as testified by Mr. Thompson.

There is no other evidentiary support for the business concept other than the list of transactions going on with the account, which is exactly what Mr. Simons was trying to work with and establish that at least a portion of this account, he said 50 percent approximately, was used for business purposes as he perceived it because the purchases out of the account were made for what was identified to be cellular products. But I don't believe that that assumption can be made by the Court for purposes of the hearing and the restitution to be awarded. And I'm going to accept that the best proof provided to the Court today is, in fact, the checks themselves and that those were made out to Wireless Solutions Cell One in the amount of—a total of $28,781.26. And because there isn't supporting evidence to consider other sources or other basis for the source of those funds, I am going to accept that amount as the appropriate amount of restitution in regard to the Heritage Bank account.

¶17   As stated above, the District Court determined the "best proof" consisted of the checks deposited in the Heritage Bank account. Tischler advances *Heath* and *State v. Hilgers*, 1999 MT 284, 297 Mont. 23, 989 P.2d 866, however, for the proposition that the court had no basis to reject Simons' testimony.

¶18   In both *Heath* and *Hilgers*, we observed an expert witness had testified at a sentencing hearing. *Heath*, ¶ 50; *Hilgers*, ¶ 11. We also set forth our longstanding rule that we will not disturb a finder of fact's determination of witness credibility or the weight to be given to testimony on appeal. *Heath*, ¶ 52; *Hilgers*, ¶ 12. Applying that rule and noting the sentencing court in each case had either expressly or apparently credited the expert testimony, we concluded no error had occurred in either award of restitution. *Heath*, ¶¶ 51-52; *Hilgers*, ¶ 12. Here, the District Court was unwilling, without additional documentation,

7

to accept the assumptions underlying Simons' calculations. As in *Heath* and *Hilgers*, we will not disturb the District Court's determinations regarding the weight and credibility of the evidence, including Simons' expert testimony. We conclude the checks constitute substantial credible evidence supporting the District Court's findings, the court did not misapprehend the effect of the evidence, and we discern no mistake in the findings. *See In re T.L.*, ¶ 18.

¶19 Alternatively, Tischler contends the affidavit of probable cause supporting the information indicated the theft loss amounted to $14,137, based on Wireless Solutions' sales invoices totaling $82,515 and deposits into the First Security Bank account totaling $68,378. Thus, he contends restitution exceeding $14,137 would constitute a windfall for the victims.

¶20 The affidavit of probable cause states Vejtasa provided information regarding deposits into the First Security Bank account and sales from August 2001 through July 2002—a different, and significantly shorter, time frame than the deposits into the Heritage Bank account between October of 2000 and June of 2002. The difference in time frames supports an inference that the total losses exceeded the $14,137 referenced in the affidavit. In any event, Tischler advances no authority for the proposition that a statement in an affidavit of probable cause precludes a court from considering evidence regarding restitution presented at a sentencing hearing. M. R. App. P. 23(a)(4) requires parties to support positions taken on appeal with citations to relevant authorities. Absent authority, we decline to address this assertion further. *See State v. Buck*, 2006 MT 81, ¶ 28, 331 Mont. 517, ¶ 28, 134 P.3d 53, ¶ 28 (citation omitted).

¶21 We hold the District Court did not err in ordering Tischler to pay $28,781.26 in

restitution.

¶22    Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE