JUSTICE RICE,
dissenting.
¶28 The Court has read into § 49-2-305, MCA, an expansive and altogether new application of the statute that the Legislature did not provide and the agency has never sought to enforce. In my view, the Court eschews critical canons of statutory construction in favor of focusing on an isolated phrase and analyzing its syntax. Further, the Court errs in its interpretation of the plain language of the statute. I thus disagree with the Court’s conclusion that the MHRA “applies to Neva’s commercial lease.” Opinion, ¶¶ 1,26.
¶29 In determining legislative intent, we are to be “mindful of the rules of statutory construction that guide our review....” State v. Heath, 2004 MT 126, ¶ 24, 321 Mont. 280, 90 P.3d 426. “ ‘Statutory construction is a “holistic endeavor” and must account for the statute’s text, language, structure, and object.’ ” Heath, ¶ 24 (quoting S.L.H. v. State Compen. Mut. Ins. Fund, 2000 MT 362, ¶ 16, 303 Mont. 364, 15 P.3d 948, quoting United States Nat’l Bank v. Independent Ins. Agents of Am. (1993), 508 U.S. 439, 455, 113 S. Ct. 2173, 2182, 124 L. Ed. 2d. 402, 418). In this holistic endeavor, we must avoid a myopic focus: “When construing a statute, it must be read as a whole, and its terms should not be isolated from the context in which they were used by the Legislature.” State v. Price, 2002 MT 229, ¶ 47, 311 Mont. 439, 57 P.3d 42; see also Mont. Sports Shooting Ass’n v. State, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003 (“We construe a statute by reading and interpreting the statute as a whole, ‘without isolating specific terms from the context in which they are used by the Legislature.’ ”) (citation omitted).
¶30 A reading of the anti-discrimination provisions within § 49-2-305, MCA, reveals, first, that there is not a single word, term or clause of a specifically commercial nature in the entire provision. There is no expression of commercial applicability to which the Court’s rendering *360 of “improved or unimproved property” may correspond. Bather, § 49-2-305, MCA, is saturated with terms related to housing, such as “residential real estate-related transactions” (§ 49-2-305(7)), “private residence” (§ 49-2-305(2)), “sleeping rooms,” (§ 49-2-305(2)), “sleeping quarters” (§ 49-2-101(14)), “single-family occupancy,” (§ 49-2-305(2)), “multifamily housing” (§ 49-2-305(6)), “dwelling units” (§ 49-2-305(6)), “dwellings” (§ 49-2-305(11)), “residence” (§ 49-2-305(11)), “living quarters” (§ 49-2-305(11)), “residing in” (§ 49-2-305(4)), “familial status” (§§ 49-2-305(10), (11), (12)), “families” (§ 49-2-305(11)), and “neighborhood” (§ 49-2-305(1)(0). These terms are in addition to the term “housing” itself, which is used 24 times within the section, including the sub-category of housing, “Housing for older persons” (§ 49-2-305(10)).
¶31 As they were when originally enacted in 1974, the anti-discrimination provisions of the MHRA are organized into sections by type of discrimination. Those sections have been labeled in the Montana Code Annotated for ease of understanding, including, for example, “49-2-303. Discrimination in employment,” “49-2-304. Discrimination in public accommodations,” “49-2-306. Discrimination in financing and credit transactions,” and “49-2-307. Discrimination in education.” Likewise, the section at issue here is labeled “49-2-305. Discrimination in housing — exemptions.” The identification of the section’s content as “discrimination in housing” corresponds both to the abundance of residential language and absence of any commercial language within the section. The Court correctly notes that these catchlines were not enacted by the Legislature. Opinion, ¶ 21. However, it cannot be denied, from a review of their content, that the anti-discrimination sections of the MHRA are organized precisely as they have been labeled, and that, consistent with its catchline, the subject of § 49-2-305, MCA, is housing discrimination, because it contains extensive provisions related to housing discrimination, and no specifically commercial language.[1]
¶32 Bates correctly notes that the phrase, “housing accommodation or improved or unimproved property,” is used only once, while the phrase “housing accommodation or property” is frequently used within § 49-2-305, MCA, thereafter. But there is more to this point. Following the *361 initial reference within -305(1) to “a housing accommodation or improved or unimproved property,” the accommodation is thereafter commonly referred to as “ the housing accommodation or property.” See § 49-2-305(1)(a) (it is unlawful to refuse to “sell, lease, or rent the housing accommodation or property to a person because of sex, marital status, race, creed, religion... .”). This subsequent phrasing is an apparent reference to the initial wording used in -305(1), and indicates that a single accommodation concept is intended for the entire section — one premised on housing. In fact, had the Court properly analyzed the language of the phrase “housing accommodation or improved or unimproved property” within § 49-2-305(1), MCA, it would have reached the same conclusion as a matter of plain language.
¶33 The Court rejects Bates’ interpretation of “improved and unimproved property” as referring to vacant land because, as the Court sees it, the term “housing accommodation” encompasses vacant land because it includes buildings “to be constructed,” and therefore, Bates’ interpretation of the phrase would add nothing to the statute. Opinion, ¶ 18. However, the Court’s interpretation distorts the plain wording of the statute. “Housing accommodation” is specifically defined by § 49-2-101( 14), MCA, to mean buildings only, whether already constructed or to be constructed. The fact that the term applies to buildings that will be constructed in the future does not somehow make the term applicable to vacant land on which no building will be constructed. Clearly, the term “improved and unimproved property” adds to the statute’s coverage those consumer housing options that do not require a building, for example: rental of land that has improvements, such as a mobile home park with sewer hook-ups (“improved property”); and rental of raw land with no improvements, such as campgrounds or other locations without any services, intended for self-contained housingunits, such as motor homes (“unimproved property”).[2] Without the phrase “improved and unimproved property,” these other housing options would not be covered by the statute. Thus, under the definitions provided by the Legislature, “housing accommodation or improved or unimproved property” covers all of the housing options available to a consumer, building and non-building, and does not require application of the phrase to commercial leases in order to give it meaning. Indeed, the statute defines “residential real estate transaction” as those including “purchasing, constructing, improving, *362 repairing, or maintaining a housing accommodation or property.” Section 49-2-305(7)(bXiXA), MCA (emphasis added). Thus, both the term “housing accommodation” and the term “properly” are defined by the statute to be residential in nature. See also § 49-2-305(4), MCA (presiding in ... the housing accommodation or property”) (emphasis added).
¶34 It is obvious that, for these reasons, the agency has interpreted this section, since its enactment, as applying only to housing discrimination claims. Administrative Rule of Montana 24.8.207, states, in part:
(1) Within ten business days of the filing of the complaint, the Human Rights Bureau shall serve notice of filing upon the parties by mail. The notice shall:
(d) in cases filed pursuant to 49-2-305, MCA (housing cases), advise the parties of their right to commence a civil action under 49-2-510(4)(a), MCA, in an appropriate district court....
Admin. R. M. 24.8.207 (2008) (Notice of Filing Complaints (emphasis added)). As the Hearing Officer noted, “[t]he MHRA does not address discrimination in commercial, as opposed to housing, leases between private individuals.” We follow the rule that “where a particular meaning has been ascribed to a statute by an agency through a long and continued course of consistent interpretation, resulting in an identifiable reliance,” such interpretation is entitled to “respectful consideration.” Mont. Power Co. v. Mont. PSC, 2001 MT 102, ¶ 25, 305 Mont. 260, 26 P.3d 91 (citation omitted).
¶35 All that said, even if the Court’s grammatical analysis has correctly determined that commercial leases could be included within the phrase “housing accommodation or improved or unimproved property,” this presents a classic example of the rare case when the Court’s proper duty nonetheless requires reversal of the District Court. As the U.S. Supreme Court has explained:
It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has been often asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results *363 which follow from giving such a broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act.
Church of the Holy Trinity v. United States, 143 U.S. 457, 459, 12 S. Ct. 511, 512, 36 L. Ed. 226,228 (1892); see also Public Citizen v. United States Dep’t of Justice, 491 U.S. 440, 454, 109 S. Ct. 2558, 2567, 105 L. Ed. 2d. 377, 397 (1989) (citing Church of the Holy Trinity)-, Bitterroot River Protective Ass’n v. Bitterroot Conservation Dist., 2008 MT 377, ¶ 72, 346 Mont. 507, 198 P.3d 219 (declining to apply the statutory term “natural water body” in its literal sense where such an application would be contrary to the Stream Access Act). Here, “a consideration of the whole legislation,” or, in terms used by our jurisprudence, a consideration of “the statute’s text, language, structure, and object,” makes it abundantly clear to me that the Legislature intended § 49-2-305, MCA, to apply only to housing discrimination, and not to commercial leases. That intention should be enforced regardless of the unusual syntax used by the drafters.
¶36 I would reverse.
JUSTICE MCKINNON joins in the Dissenting Opinion of JUSTICE RICE.

 See also § 49-2-510, MCA, which is labeled “Procedures and remedies for enforcement of housing discrimination.’’ This provision sets forth the procedure to be used by a “person claiming to be aggrieved by any discriminatory practice prohibited by 49-2-305.” Section 49-2-510(1), MCA.

 A ballooning use of this arrangement can be seen in some ofthe ubiquitous "man camps” in the oil fields.