FILED

April 9 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 13-0154

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 92

WESTERN MONTANA WATER USERS
ASSOCIATION, LLC, on behalf of its
members, who own irrigated lands with
appurtenant water and other water rights
within the Mission, Jocko Valley, and
Flathead Irrigation Districts,

        Plaintiff and Appellee,

    v.

MISSION IRRIGATION DISTRICT, JOCKO
VALLEY IRRIGATION DISTRICT,
FLATHEAD IRRIGATION DISTRICT, and
FLATHEAD JOINT BOARD OF CONTROL,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                In and For the County of Lake, Cause No. DV-12-327
                Honorable C.B. McNeil, Presiding Judge

COUNSEL OF RECORD:

       For Appellants:

             Jon Metropoulos, Metropolous Law Firm, PLLC; Helena, Montana

       For Appellees:

             Brian C. Shuck, Shuck/Kuker LLC, Cheyenne, Wyoming
             Bob Fain, Attorney at Law, Billings, Montana

       For Amicus Confederated Salish and Kootenai Tribes:

             John B. Carter, Confederated Salish and Kootenai Tribes, Tribes Legal
             Department; Pablo, Montana

       For Amicus Montana Reserved Water Rights Compact Commission:

Chris D. Tweeten, Chair, Montana Reserved Water Rights Compact Commission; Missoula, Montana

For Amicus Montana Water Resources Association:

Holly Jo Franz, Franz & Driscoll, PLLP; Helena, Montana

Submitted on Briefs: April 3, 2013

Decided: April 9, 2013

Filed:

_____
Clerk

2

Justice Brian Morris delivered the Opinion of the Court.

¶1 The Mission Irrigation District, Jocko Valley Irrigation District, Flathead Irrigation District, and Flathead Joint Board of Control (collectively Irrigation Districts), appeal a writ of mandate issued by the Twentieth Judicial District Court, Lake County, on February 15, 2013. The writ of mandate enjoined the Irrigation Districts from entering into a Water Use Agreement with the Confederated Salish and Kootenai Tribes of the Flathead Nation and the United States. The writ of mandate rescinded and superseded an alternative writ of mandate the District Court had issued on December 14, 2012. The alternative writ of mandate directed the Irrigation Districts to comply with §§ 85-7-1956 and 85-7-1957, MCA, and correspondingly enjoined the Irrigation Districts from entering into a proposed agreement with the United States and the Confederated Salish and Kootenai Tribes. We vacate both the District Court's writ of mandate and injunction and the District Court's alternative writ of mandate.

¶2 We address the following issues on appeal:

¶3 *Whether the District Court has issued a final appealable order?*

¶4 *Whether the District Court properly granted the writ of mandate and injunction?*

¶5 *Whether the District Court correctly determined that the Irrigation Districts had to comply with §§ 85-7-1956 and 85-7-1957, MCA, before they execute the Water Use Agreement?*

## PROCEDURAL AND FACTUAL BACKGROUND

3

¶6     The Confederated Salish and Kootenai Tribes (Tribes) entered into the Hellgate Treaty with the United States in 1855. Treaty of Hellgate, July 16, 1855, 12 Stat. 975 (1859). This treaty created the Flathead Indian Reservation in Montana. Congress authorized and directed the allotment of land within the Flathead Reservation for homestead purposes in 1904. Section 8, Act of April 23, 1904, 33 Stat. 302 (1904).

¶7     Congress authorized the Secretary of the Interior in 1908 to construct the Flathead Indian Irrigation Project (FIIP) to deliver irrigation water to irrigable lands on the Flathead Reservation. Act of May 29, 1908, 35 Stat. 444 (1908). The FIIP has provided individual tribal members and non-tribal members on the Flathead Reservation with water for irrigation. The Flathead Joint Board of Control and the United States both have submitted claims for these water rights in the Montana Water Court. The Western Montana Water Users Association, LLC (Water Users) comprise a group of landowners who claim to possess FIIP water rights for irrigation.

¶8     The Tribes claim to possess aboriginal water rights and water rights reserved by the Hellgate Treaty of 1855. Treaty of Hellgate, July 16, 1855, 12 Stat. 975 (1859). The Tribes claim that their water rights include the FIIP water used by individual tribal members and non-tribal members for irrigation. The State of Montana created a Reserved Water Rights Compact Commission (Commission) to negotiate a settlement of the water rights claimed by Indian tribes, including the Tribes' claim to the FIIP water rights. Section 85-2-702, MCA.

¶9     The State of Montana, the Tribes, and the United States negotiated a proposed Compact to settle the Tribes' water rights claim. The Irrigation Districts are not a party to

4

the Compact. The Compact, which is not before us in this litigation, purportedly resolves the Tribes' water right claims, including the FIIP water used for irrigation by individual tribal members and non-tribal members.

¶10     The Tribes, the United States, and the Irrigation Districts drafted a second document as an appendix to the proposed Compact. This second document is the Water Use Agreement. The Water Use Agreement states that one purpose of the agreement is to "settle the rights of irrigators served by the FIIP . . . to receive irrigation water."

¶11     The Water Users sought a writ of mandate against the Irrigation Districts. The Water Users argued that §§ 85-7-1956 and 85-7-1957, MCA, apply to the Water Use Agreement. Application of these sections would require the Irrigation Districts to submit the final Water Use Agreement to a vote of the irrigators, pursuant to § 85-7-1956, MCA. The Irrigation Districts also would have to receive approval for the Water Use Agreement from a district court, pursuant to § 85-7-1957, MCA.

¶12     The District Court issued an alternative writ of mandate that ordered the Irrigation Districts to comply with these statutes before executing the Water Use Agreement, or to submit a brief that detailed why the Irrigation Districts need not comply with the statutes. The Irrigation Districts submitted a brief to the District Court that argued that §§ 85-7-1956 and 85-7-1957, MCA, do not apply to the Water Use Agreement. The Montana Department of Natural Resources and Conservation also submitted an Amicus Curiae brief regarding the applicability of §§ 85-7-1956 and 85-7-1957, MCA, to the Water Use Agreement. The District Court conducted a hearing on February 14, 2013. The hearing transcript reveals that

the only issue presented and argued before the District Court was the applicability of §§ 85-7-1956 and 85-7-1957, MCA.

¶13 The District Court issued an order on February 15, 2013, finding "moot" the question of whether these statutes applied to the Water Use Agreement. The District Court further issued an order the same day entitled Findings of Fact, Conclusions of Law, and Writ of Mandate. The District Court declared that this writ of mandate superseded the alternative writ of mandate. In the writ of mandate, the District Court determined that the Water Use Agreement contained provisions that exceeded the Irrigation Districts' authority. The District Court further enjoined the Irrigation Districts from entering into the Water Use Agreement or any other agreement that contained similar provisions. The Irrigation Districts appeal.

## STANDARD OF REVIEW

¶14 We review a district court's decision to issue an injunction for manifest abuse of discretion. *City of Whitefish v. Bd. of Co. Comm'rs of Flathead Co.*, 2008 MT 436, ¶ 7, 347 Mont. 490, 199 P.3d 201. A district court's decision to issue or deny a writ of mandate represents a conclusion of law that we review for correctness. *Bostwick Props. v. Mont. Dep't of Nat. Res. & Cons.*, 2009 MT 181, ¶ 15, 351 Mont. 26, 208 P.3d 868.

## DISCUSSION

¶15 *Whether the District Court has issued a final appealable order?*

¶16 The Water Users argue that the District Court never issued a final order that resolved all of the Water Users' claims. The Water Users claim that pursuant to M. R. App. P. 6(1),

6

this Court cannot hear an appeal unless the District Court issued a final judgment. The District Court issued an injunction as part of its writ of mandate. An order granting an injunction is immediately appealable. M. R. App. P. 6(3)(e). The Irrigation Districts' appeal from the District Court's writ of mandate and injunction is properly before this Court.

¶17 The Water Users next argue that this Court cannot consider the Irrigation Districts' claim that §§ 85-7-1956 and 85-7-1957, MCA, do not apply to the Water Use Agreement. The Irrigation Districts appealed the District Court's writ of mandate. The District Court addressed the applicability of §§ 85-7-1956 and 85-7-1957, MCA, to the Water Use Agreement in the alternative writ of mandate, but not explicitly in the writ of mandate.

¶18 Montana Rule of Appellate Procedure 4(4)(a) provides that "[a]n appeal from a judgment draws into question all previous orders and rulings excepted or objected to which led up to and resulted in the judgment." The alternative writ of mandate represents a previous order which led up to the final judgment. The issue of whether §§ 85-7-1956 and 85-7-1957, MCA, apply to the Water Use Agreement is properly before this Court.

¶19 *Whether the District Court properly granted the writ of mandate and injunction?*

¶20 The Water Users filed their complaint before the District Court that sought relief on the basis that the Irrigation Districts were failing to comply with §§ 85-7-1956 and 85-7-1957, MCA. The District Court did not address the applicability of these statutes in its writ of mandate and injunction. Instead, the District Court evaluated the Water Use Agreement. The District Court determined that the Water Use Agreement contractually would obligate the Water Users to transfer or assign their water rights to the Tribes without compensation.

7

The District Court determined that such a contractual provision exceeded the Irrigation Districts' authority. The District Court therefore enjoined the Irrigation Districts from executing the Water Use Agreement or any contract with similar terms. Although the District Court titled this order "writ of mandate," the District Court did not mandate that the Irrigation Districts take any action as part of this order.

¶21 The District Court issued its injunction based entirely on its determination that the Water Use Agreement included terms that exceeded the Irrigation Districts' authority. None of the parties presented any briefing or made arguments to the District Court regarding the issue of the Irrigation Districts' authority to agree to the terms within the Water Use Agreement. The Water Users' requests for relief focused exclusively on the applicability of §§ 85-7-1956 and 85-7-1957, MCA. The Water Users requested no relief relating to the terms of the Water Use Agreement itself.

¶22 The injunction suffers from an additional defect. The District Court appears to have premised its injunction upon its finding that the Irrigation Districts were exceeding their authority by giving away the water rights of the individual irrigators within the irrigation districts. The United States and the Tribes claim ownership of these same water rights. The Compact, which is currently being negotiated between the State of Montana, the Tribes, and the United States, seeks to resolve the ownership of these water rights. The District Court disavowed having decided any issue of water rights in response to a writ of supervisory control in this same matter. Without any determination of the water issues on the merits,

8

which the District Court admittedly and properly did not do in this proceedings, no grounds exist for its conclusion that the Water Use Agreement will take away those water rights.

¶23    We appreciate the time constraints placed on the District Court to resolve this matter. The 2013 Montana legislature currently is considering whether to approve the Compact. The Commission, which possesses the statutory authority to negotiate settlements such as the Compact, is set to expire on July 1, 2013. The District Court attempted to accommodate all of these competing interests by providing an expedited briefing schedule and issuing a timely opinion. The matters addressed by the District Court in its February 15, 2013, order, however, were not raised or presented by the parties. The parties never represented that they had a dispute that necessitated the District Court's resolution of any issue other than the applicability of §§ 85-7-1956 and 85-7-1957, MCA.

¶24    For these reasons, we determine that the District Court improperly granted the writ of mandate and injunction based entirely on an issue not briefed or argued before the District Court. The District Court further improperly enjoined the Irrigation Districts from executing an agreement that exceeded their authority when the Water Users did not request such an injunction in their request for relief. We therefore vacate the District Court's February 15, 2013, writ of mandate and injunction.

¶25    The District Court stated that the writ of mandate superseded the alternative writ of mandate. Our decision to vacate the writ of mandate restores the alternative writ of mandate. We turn to whether the District Court correctly determined in the alternative writ of mandate that §§ 85-7-1956 and 85-7-1957, MCA, apply to the Water Use Agreement.

9

¶26 *Whether the District Court correctly determined that the Irrigation Districts had to comply with §§ 85-7-1956 and 85-7-1957, MCA, before they execute the Water Use Agreement?*

¶27 The Water Users requested that the District Court grant a writ of mandate ordering the Irrigation Districts to comply with §§ 85-7-1956 and 85-7-1957, MCA, before executing the Water Use Agreement. A party who seeks a writ of mandate must establish that it is entitled to the performance of a clear legal duty. *Beasley v. Flathead Co. Bd. of Adjustments*, 2009 MT 120, ¶ 16, 350 Mont. 171, 205 P.3d 812; *Bostwick*, ¶ 16. Here we must determine whether §§ 85-7-1956 and 85-7-1957, MCA, impose a clear legal duty on the Irrigation Districts to seek member approval and judicial review of the Water Use Agreement. *Beasley*, ¶ 16; *Bostwick*, ¶ 16.

¶28 We interpret a statute first by looking to its plain language. *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003. We construe a statute by reading and interpreting the statute as a whole. *Mont. Sports Shooting*, ¶ 11. We do not isolate specific terms from the context in which they are used by the legislature. *Mont. Sports Shooting*, ¶ 11. We will not interpret the statute further if the language appears clear and unambiguous. *Mont. Sports Shooting*, ¶ 11.

¶29 The legislature passed §§ 85-7-1956 and 85-7-1957, MCA, together as part of a larger legislative act in 1931. This act included §§ 85-7-1951 to 85-7-1958, MCA. This Court construes a statute by reading it as a whole. *Mont. Sports Shooting*, ¶ 11. Further, the legislature specifically stated that it intended these statutes to be interpreted together.

10

Section 85-7-1958, MCA, provides that the restrictions detailed in these sections should apply only to the contracts discussed in these sections, and should not apply to contracts authorized by other statutes.

¶30    Section 85-7-1956, MCA, details the need for an irrigation district to obtain a majority vote or a signed petition before it enters into a contract with the United States. The statute provides that "[s]uch petition shall be addressed to the board of commissioners, shall set forth the aggregate amount of money to be borrowed from the United States and the purpose or purposes thereof . . . ." Section 85-7-1956, MCA. The Irrigation Districts argue that the requirement that the petition detail the "aggregate amount of money to be borrowed from the United States" demonstrates that this section contemplates only contracts with the United States for a loan of money.

¶31    Section 85-7-1957, MCA, includes two subsections. Subsection (1) describes how an irrigation district must submit any contract "with the United States hereunder" to a court to be judicially examined and approved or disapproved. Subsection (2) declares that "the practice and procedure . . . as provided in subsection (1) shall be as nearly as possible in conformity with the practice and procedure now provided for the confirmation before the issuance and sale of bonds of an irrigation district." Section 85-7-1957, MCA. The Irrigation Districts argue that the "issuance and sale of bonds" language in subsection (2) similarly demonstrates that subsection (2) contemplates application only to contracts with the United States for a loan of money. The Irrigation Districts further argue that the language of

11

subsection (2) ties to subsection (1), and, therefore, they must seek court approval only for contracts with the United States for a loan of money.

¶32    The plain language of §§ 85-7-1951 to 85-7-1958, MCA, appears to apply only to contracts with the United States for a loan of money.  The parties agree that the Water Use Agreement involves no contract with the United States for a loan of money.  The Water Users argue, however, that the legislature would have used the term "loan" instead of "contract" if the legislature had intended that these provisions would apply only to loans. The Water Users further argue that the entire statutory scheme demonstrates that these provisions apply to contracts with the United States either for a loan of money or for construction or repair work.

¶33    The Water Users argue that the first statute in this 1931 legislative act, § 85-7-1951, MCA, demonstrates that the legislature intended for the entire legislative act to apply to contracts for a loan of money and to contracts for construction or repair work.  Section 85-7-1951, MCA, provides an irrigation district with the authority to enter into any contract with the United States for a loan of money:

> to be used by the district for the liquidation of bonded or other outstanding indebtedness of the district **or** for doing or causing to be done, under the supervision of the secretary of the interior of the United States, any construction, betterments, or repair work necessary to place the irrigation system of the district in good operating condition.  (emphasis added).

¶34    The Water Users argue that the "or" emphasized above demonstrates that the contract with the United States either could be a contract for a "loan of money" or could be a contract for "construction, betterments, or repair work."  The Irrigation Districts contend that the "or"

12

refers to how an irrigation district can use the money that it borrows from the United States: either for outstanding indebtedness or for construction or repair work. A review of the other sections included in the 1931 legislative act confirms that the entire act details an irrigation district's authority to contract with the United States for a loan of money.

¶35 Section 85-7-1952, MCA, grants irrigation districts the authority to levy assessments on privately owned land within the irrigation district to pay back a loan with the United States. In the event that an irrigation district defaults on a loan from the United States, § 85-7-1954, MCA, provides the United States may assume control of the irrigation operation and withhold water until payment is made. Section 85-7-1955, MCA, details how an irrigation district can use the money borrowed from the United States to liquidate existing bonded indebtedness.

¶36 Both §§ 85-7-1956 and 85-7-1957, MCA, provide that they apply to contracts made with the United States "hereunder." The Irrigation Districts argue that "hereunder" refers only to the sections passed in the 1931 legislative act. The Water Users contend that "hereunder" applies to §§ 85-7-1900 to 85-7-1975, MCA. This broader set of statutes includes both §§ 85-7-1902 and 85-7-1906, MCA.

¶37 Section 85-7-1902, MCA, grants an irrigation district the authority to "make and execute all necessary contracts." Section 85-7-1906, MCA, grants an irrigation district the authority to enter into contracts with the United States. These contracts with the United States can be for loans of money as well as contracts for the construction, operation, and maintenance of water works. The Water Users further argue that the Water Use Agreement

13

constitutes a contract with the United States that includes provisions related to construction, operation, and maintenance of water works. The Water Users contend that the restrictions in §§ 85-7-1956 and 85-7-1957, MCA, apply to all contracts with the United States authorized in § 85-7-1906, MCA, and apply therefore to the Water Use Agreement.

¶38 Read together, the statutes make clear that the legislature did not intend §§ 85-7-1951 to 85-7-1958, MCA, to apply to all contracts with the United States authorized under § 85-7-1906, MCA. The legislature intended §§ 85-7-1951 to 85-7-1958, MCA, to apply only to contracts with the United States for a loan of money. The final statute in the 1931 legislative act, § 85-7-1958, MCA, provides that §§ 85-7-1951 to 85-7-1958, MCA, shall not be read to limit the power and authority of an irrigation district to contract with the United States under other applicable statutes.

¶39 The Water Users ask this Court to interpret "hereunder" to include all contracts with the United States that an irrigation district has authority to enter into pursuant to § 85-7-1906, MCA. Such an interpretation would render § 85-7-1958, MCA, meaningless. We seek to avoid any statutory interpretation that would render meaningless any statute, or section thereof, and not give effect to the statute. *State v. Heath*, 2004 MT 126, ¶ 31, 321 Mont. 280, 90 P.3d 426, citing *State v. Berger*, 259 Mont. 364, 367, 856 P.2d 552, 554 (1993).

¶40 Further, the Water Users' interpretation of "hereunder" to include all contracts authorized under § 85-7-1906, MCA, would render § 85-7-1951, MCA, redundant and meaningless. Section 85-7-1951, MCA, serves to limit the types of contracts with the United

14

States that will be affected by the restrictions in the 1931 legislative act. The Water Users ask this Court to interpret the 1931 legislative act broadly to include all contracts with the United States authorized under § 85-7-1906, MCA. Under this broad interpretation, § 85-7-1951, MCA, would become a redundant statute that reauthorizes the irrigation districts to enter into contracts with the United States.

¶41 We decline to adopt the Water Users' broad interpretation of §§ 85-7-1956 and 85-7-1957, MCA, when that interpretation would render meaningless the more specific statute § 85-7-1958, MCA. We likewise decline to adopt the Water Users' broad interpretation of §§ 85-7-1956 and 85-7-1957, MCA, when that interpretation would render meaningless and redundant § 85-7-1951, MCA. Thus, the Irrigation Districts do not need to comply with these restrictions before they enter into other types of contracts authorized under § 85-7-1906, MCA. These other types of contracts include contracts for construction, operation, and maintenance of water works.

¶42 The plain language of §§ 85-7-1956 and 85-7-1957, MCA, read in the context of the act within which they reside, require an irrigation district to seek district court approval and receive a vote of the irrigators only for a contract with the United States that includes a loan of money. The parties agree that the Water Use Agreement does not include a provision for a loan of money from the United States. Accordingly, these sections do not apply to the Water Use Agreement.

¶43 The Water Users have not demonstrated that the Irrigation Districts failed to perform a "clear legal duty." Nothing in §§ 85-7-1956 and 85-7-1957, MCA, requires the Irrigation

15

Districts to conduct a vote of its members or to seek district court approval before they enter into the Water Use Agreement. The District Court improperly granted the alternative writ of mandate that compelled the Irrigation Districts to comply with these statutes before they executed the Water Use Agreement.

## CONCLUSION

¶44    The District Court improperly granted an injunction on grounds not requested by the Water Users and not briefed or argued before the District Court. We dissolve the writ of mandate and injunction that the District Court issued on February 15, 2013. We further reverse the District Court's conclusion that §§ 85-7-1956 and 85-7-1957, MCA, apply to the Water Use Agreement. As a result, we dissolve the alternative writ of mandate that the District Court issued on December 14, 2012.


                                                    /S/ BRIAN MORRIS


We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE