JUSTICE MORRIS
delivered the Opinion the Court.
¶1 Montana Sports Shooting Association, Inc., and Gary S. Marbut (Marbut) appeal from an order of the Fourth Judicial District, Missoula County, denying Montana Sports Shooting Association’s motion for summary judgment. We affirm.
¶2 Montana Sports Shooting Association presents the following issue on appeal:
¶3 Whether the District Court properly determined that the Montana Department of Fish, Wildlife, and Parks (FWP) did not violate the statutory prohibition against political activity under § 87-1-204, MCA.
PROCEDURAL AND FACTUAL BACKGROUND
¶4 The Montana Sports Shooting Association is a Montana non-profit corporation. Gary Marbut is the Montana Sports Shooting Association’s president. We will refer in this opinion to Montana Sports Shooting Association and Gary Marbut collectively as “MSSA” for purposes of clarity. MSSA asserts that it lobbies the Montana Legislature to protect its members’ rights and interests. MSSA alleges that FWP’s competing lobbying efforts often conflict with its own lobbying efforts. MSSA filed a complaint for declaratory judgment and a request for preliminary and permanent injunction in the District Court. MSSA requested a declaratory judgment that FWP may not lobby the Legislature, may not appear before it as either a proponent or opponent of proposed legislation, or otherwise act to influence legislative decisions.
¶5 MSSA relied on the language in § 87-1-204, MCA, concerning the political activity of FWP employees, that provides
While retaining the right to vote as he may please and to express his opinions on all political questions, no employee of [FWP] may use his official authority or influence for the purpose of interfering with an election or affecting the results thereof or for the purpose of coercing or influencing the political actions of any person or body.
MSSA argued that this prohibition on FWP employee political activity includes lobbying the Legislature or its members and appearing before *3 legislative committees to represent FWP’s position on proposed legislation. FWP responded that the Legislature intended § 87-1-204, MCA, to cover only political elections, like the general prohibition on public employees’ political activity under § 2-2-121, MCA, and § 13-35-226, MCA.
¶6 MSSAmoved for summaryjudgment. MSSA supported the motion with an affidavit submitted by Marbut. Marbut’s affidavit noted specific instances in which FWP employees had testified in support of a proposed senate bill and otherwise had attempted to influence the Legislature. FWP admitted that it routinely lobbies the Legislature and that its employees appear at legislative hearings. MSSA contended that the plain language of § 87-1-204, MCA, expressly placed stricter limitations on FWP political activity than the general limitations placed on the public employees of other executive agencies. FWP countered that canons of statutory construction and long-standing FWP practice support its contention that § 87-1-204, MCA, does not result in stricter limitations.
¶7 The District Court examined the history of statutory limitations on FWP political activity. The court examined the meaning of the word “politics” and its treatment in other jurisdictions. The court also examined the operation of other Montana and federal statutes limiting executive political activity. The court concluded that MSSA’s interpretation would restrict too narrowly FWP’s internal and external activities. The District Court denied MSSA’s motion for summary judgment. Although not stated expressly, the court’s order, in effect, granted summaryjudgment to FWP. Neither party asserted that any genuine issue of material fact precluded summary judgment. Consistent with this interpretation, FWP filed a notice of entry of judgment. MSSA appeals.
STANDARD OF REVIEW
¶8 We review de novo a district court’s decision to grant summary judgment, using the criteria applied by the district court under M. R. Civ. P. 56. Farmers Co-op. Ass’n v. Amsden, LLC, 2007 MT 286, ¶ 24, 339 Mont. 445, ¶ 24, 171 P.3d 690, ¶ 24. A district court properly grants a motion for summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Farmers Co-op., ¶ 24.
DISCUSSION
¶9 Whether the District Court properly determined that FWP did not *4 violate the statutory prohibition against political activity under §87-1-204, MCA.
¶10 The parties disagree over the proper interpretation of the term “political actions” under § 87-1-204, MCA. MSSA argues that “political actions” clearly and unambiguously applies to the activities of FWP and its employees before the Legislature. MSSA cites to Black’s Law Dictionary for the proposition that “political actions” broadly means “of or relating to the conduct of government.” Black’s Law Dictionary 1196 (Bryan A. Garner ed., 8th ed., West 2004). MSSA asserts that we must construe the statute’s prohibition on “coercing or influencing the political actions of any person or body” as prohibiting FWP from lobbying the Legislature, appearing before it as a proponent or opponent of legislation, or otherwise influencing the decisions of legislative members. FWP contends that “political actions” relates only to political elections.
¶11 We interpret a statute first by looking to its plain language. State v. Letasky, 2007 MT 51, ¶ 11, 336 Mont. 178, ¶ 11,152 P.3d 1288, ¶ 11. We construe a statute by reading and interpreting the statute as a whole, “without isolating specific terms from the context in which they are used by the Legislature.” City of Great Falls v. Morris, 2006 MT 93, ¶ 19, 332 Mont. 85, ¶ 19, 134 P.3d 692, ¶ 19 (citation omitted). We will not interpret the statute further if the language is clear and unambiguous. Letasky, ¶ 11. We look to legislative intent if the language is not clear and unambiguous, and give effect to the legislative will. Letasky, ¶ 11. Statutory construction should not lead to absurd results if a reasonable interpretation can avoid it. Letasky, ¶ 11. We must harmonize statutes relating to the same subject, as much as possible, giving effect to each. Yellowstone Federal Credit Union v. Daniels, 2008 MT 111, ¶ 18, 342 Mont. 451, ¶ 18, 181 P.3d 595, ¶ 18.
¶12 Section 87-1-204, MCA, provides no clear or unambiguous meaning for the phrase “political actions.” The statute first addresses an FWP employee’s attempts to influence or interfere with elections in the course of their employment with FWP. Section 87-1-204, MCA. The language at issue, contained in the statute’s final clause, prohibits FWP employees from using their “official authority or influence ... for the purpose of coercing or influencing the political actions of any person or body.” Section 87-1-204, MCA.
¶13 MSSA urges this Court to construe the modifier “political” to connote all activities “of or relating to the conduct of government.” MSSA argues that the plain meaning of the phrase “political actions” *5 includes lobbying and testifying before the Legislature, as well as attempts to influence individual legislators. In fact, MSSA reads § 87-1-204, MCA, as prohibiting any FWP employee from influencing any action relating to the conduct of any governmental body. We decline to adopt MSSA’s interpretation.
¶14 MSSA’s broad interpretation of § 87-1-204, MCA, would conflict directly with the numerous statutory obligations imposed on FWT. For example, in 1987, more than sixty years after the Legislature enacted the initial version of § 87-1-204, MCA, the Legislature commanded that FWT “shall report to the fish and game committee of each house of the legislature concerning upland game bird enhancement activities undertaken ... together with any recommendations concerning the operation of the program.” Section 87-1-250, MCA (emphasis added). MSSA’s interpretation of § 87-1-204, MCA, would bar FWT employees from fulfilling this statutory duty. More recently, the Legislature in 1995 enacted § 87-1-272, MCA. This statute, likewise, requires FWT to “present a detailed report to each regular session of the legislature ...” regarding the progress of the future fisheries improvement program. Section 87-1-272, MCA (1995). MSSA’s interpretation of § 87-1-204, MCA, once again, would prohibit FWT from fulfilling its statutory obligations to report to the legislature with this information. See also § 87-5-107, MCA (authorizing FWP to propose specific legislation for the purpose of expanding the State’s list of endangered species).
¶15 We must presume in construing these statutes that the Legislature intended to make some change in existing law by passing it. Cantwell v. Geiger, 228 Mont. 330, 333-34, 742 P.2d 468, 470 (1987). MSSA’s interpretation of § 87-1-204, MCA, would render these later-enacted statutes idle acts. We must presume that the Legislature would not pass useless or meaningless legislation. Oster v. Valley County, 2006 MT 180, ¶ 17, 333 Mont. 76, ¶ 17, 140 P.3d 1079, ¶ 17. ¶16 MSSA’s argument regarding political actions would not be limited, moreover, to a particular branch of government, or a particular kind of governmental conduct. MSSA’s interpretation would prevent FWT and its employees from fulfilling the agency’s statutory obligations to cooperate and make agreements with other state agencies, federal agencies, tribes, and state and local governments. For example, § 87-1-279, MCA, provides that FWT “shall promote the use of publicly owned land...” for shooting ranges and “may negotiate with federal, state, and local agencies to encourage land trades ....” (Emphasis added). Section 87-1-216, MCA, provides that FWT “shall consult and cooperate with *6 the department of livestock...” regarding bison management. Finally, § 87-l-201(9)(a)(iii), MCA, provides that FWP “shall ... request that land management agencies open public lands and public roads ...” when implementing an elk management plan. (Emphasis added). MSSA’s interpretation of § 87-1-204, MCA, would bar FWP from fulfilling its extensive list of statutory obligations to influence the decisions of other governmental organizations. See e.g. § 87-1-257, MCA (requiring FWP to work cooperatively with state, local, private, tribal, and federal organizations in administering the river restoration program); § 87-5-504, MCA (FWP shall provide recommendations to state, county, municipal, or other Montana agencies to eliminate adverse effects to fish and game habitat when reviewing project applications); § 23-2-641, MCA (requiring the attorney general, upon the request of FWP, to sue to recover snowmobiling penalties).
¶17 Indeed, MSSA’s interpretation of “political actions,” when read together with the statute’s application to any body, would prohibit FWP employees from influencing any action within FWP itself. This interpretation would eliminate FWP’s ability to make policy decisions and carry out executive branch mandates. MSSA’s interpretation would limit FWP to conducting only the most basic, clerical functions. This interpretation of § 87-1-204, MCA, would render FWP unable to perform its statutorily mandated obligations. We decline to adopt an interpretation that leads to such an absurd result. Letasky, ¶ 11.
¶18 The Dissent similarly urges an untenable construction of § 87-1-204, MCA. The Dissent contends that, at the very least, “influencing the political action” includes “lobbying the Legislature, appearing before it as a proponent or opponent of legislation, and otherwise influencing the decisions of individual legislators ....” Dissent, ¶ 20. The Dissent provides no outer limit, however, to its plain meaning construction of the phrase “influencing the political actions.” The Dissent’s interpretation provides no “at most” stopping point that defines the scope of restrictions on FWP employees set forth in § 87-1-204, MCA.
¶19 The Dissent concedes that the employees of executive agencies need to lobby and testify before the Legislature. Dissent, ¶ 19. The Dissent acknowledges that construing § 87-1-204, MCA, as a prohibition on FWP’s ability to influence legislative members makes no sense. Dissent, ¶ 19. The Dissent nevertheless would construe the statute in a manner that precludes FWP from fulfilling its necessary and statutorily mandated obligations to report and make recommendations to the legislature. The Dissent’s plain language *7 construction of the statute leads to absurd results.
¶20 We must construe § 87-1-204, MCA, in a manner that avoids the absurd result that stems from the interpretation urged by MSSA and the Dissent. Letasky, ¶ 11. In an effort to harmonize § 87-1-204, MCA, with statutes relating to the same subject, we examine the statute and its terms in their legislative context and attempt to give effect to the legislative will. Yellowstone Federal Credit Union, ¶ 18; City of Great Falls, ¶ 19. The structure and language within § 87-1-204, MCA, provide no clear guidance, however, regarding the proper construction of “political actions.” The statute’s last clause does not limit inherently the phrase “political actions” to any particular kind of government conduct.
¶21 Section 87-1-204, MCA, is a unique statute. No other Montana statute or case refers to a public employee’s ability to “coerce” or “influence” “political actions.” Montana law nowhere else singles out the political activity of a specific executive agency. Section 13-35-226, MCA, sets forth general limitations that govern the political activity of other agency employees. Montana law prohibits public employees, in the course of their employment, from soliciting support for, or opposition to, a political candidate or issue, or lobbying on behalf of another organization. Sections 13-35-226(4), 2-2-121, MCA.
¶22 The Legislature has amended § 87-1-204, MCA, several times since it was originally codified at § 3658, RCM, in 1921. The statute always has contained, however, the essential components at issue. Section 3658 originally provided:
While retaining the right to vote as he may please, and to express his opinions on all political questions, no Fish and Game Warden or Deputy shall take any active part in political management or political campaigns, nor shall he use his official authority or influence for the purpose of interfering with an election, or effecting the results, thereof, or for the purpose of coercing or influencing the political actions of any person or body. Section 3658, RCM (1921) (emphasis added).
¶23 This Court examined the 1921 version of the statute in State v. Sullivan, 98 Mont. 425, 40 P.2d 995 (1935). Sullivan concerned outgoing Governor Erickson’s appointment of several fish and game commissioners. Erickson appointed four men to the commission in 1932 to serve in staggered terms through 1936. Sullivan, 98 Mont. at 434-35, 40 P.2d at 996. Erickson resigned and F.H. Cooney replaced him as governor in 1933. Sullivan, 98 Mont. at 435, 40 P.2d at 996. Governor Cooney revoked Erickson’s appointments and removed the *8 appointees in 1934. Governor Cooney appointed his own candidates. Both Erickson’s and Cooney’s appointees claimed to be the rightful office-holders. Sullivan, 98 Mont. at 436, 40 P.2d at 996-97.
¶24 The sole issue before the Court in Sullivan concerned whether the Governor had authority to remove Erickson’s appointees without notice and opportunity to be heard in their defense. Sullivan, 98 Mont. at 437, 40 P.2d at 997. The Court looked in part to legislative intent to reach its conclusion. The Court examined the history of FWP and the statutes that governed the agency. Sullivan, 98 Mont. at 442, 40 P.2d at 999-1000. The Court determined that the Legislature had enacted § 3658, RCM, to ensure that FWP is “at all times ... [made up of] a majority of experienced members-a continuing body removed from political control and manipulation.” Sullivan, 98 Mont. at 443, 40 P.2d at 1000. The Court concluded that the statute “clearly denotes the intention of the Legislature to remove [FWP] from the control of the Governor ....” Sullivan, 98 Mont. at 443, 40 P.2d at 1000. The District Court in this case determined, in light of Sullivan, that the Legislature intended § 87-1-204, MCA, to remove FWP and its employees from the influence of “partisan politics.”
¶25 We previously have looked to other jurisdictions having similar statutes to guide our interpretation in the absence of sufficient Montana law on an issue. E.g. In re Custody and Parental Rights of A.P., 2007 MT 297, ¶ 24, 340 Mont. 39, ¶ 24, 172 P.3d 105, ¶ 24. The U.S. Supreme Court has encountered language similar to the language in § 87-1-204, MCA, in decisions upholding federal and state restrictions on employees’ political activities. The Court upheld an early Congressional provision that prohibited federal employees from giving a “thing of value for political purposes.” Ex Parte Curtis, 106 U.S. 371, 1 S. Ct. 381 (1882).
¶26 Congress enacted the Civil Service Act of 1883 a year after Curtis, and, in language nearly identical to that of § 87-1-204, MCA, prohibited employees from using their “official authority or influence to coerce the political action of any person or body.” Civil Service Act of 1883, ch. 27, 22 Stat. 403, 404 (1883). The Court cited the Civil Service Act as part of a movement “against the mixing of partisan politics ...” when it reaffirmed the constitutionality of the Hatch Act, Congress’s most comprehensive regulation of the political activities of federal employees. U.S. Civil Service Com’n v. National Ass’n of Letter Carriers, 413 U.S. 548, 557-58, 93 S. Ct. 2880, 2886-87 (1973). The Court determined in Letter Carriers that the congressional and executive regulations of federal employees targeted partisan political *9 activities. Letter Carriers, 413 U.S. at 564, 93 S. Ct. at 2889-90.
¶27 The Court, on the same day that it decided Letter Carriers, upheld an Oklahoma statute modeled after the Hatch Act, in Broadrick v. Oklahoma, 413 U.S. 601, 93 S. Ct. 2908 (1973). The Court upheld Oklahoma’s prohibition on employee “assessments, subscriptions, or contributions for any ... political purpose.” Broadrick, 413 U.S. at 603 n. 1, 93 S. Ct. at 2911 n. 1. The Court upheld the Oklahoma statute insofar as it forbid partisan political associations. The Court took additional support from the Oklahoma Attorney General’s interpretation of the statute as restricting only “clearly partisan political activity.” Broadrick, 413 U.S. at 617, 93 S. Ct. at 2918-19.
¶28 The Court determined that Congress intended restrictions on the political activities of federal employees to refer to employee involvement in partisan politics. Letter Carriers, 413 U.S. at 564, 93 S. Ct. at 2889-90. The Court emphasized in Letter Carriers the fact that Congress had exempted from regulation “nonpartisan political activity ... not identified with national or state political parties ... including issues with respect to constitutional amendments, referendums, approval of municipal ordinances, and the like.” Letter Carriers, 413 U.S. at 575-76, 93 S. Ct. at 2895-96.
¶29 Letter Carriers and Broadrick comport with this Court’s determination in Sullivan that the Legislature enacted § 87-1-204, MCA, to “removeG [FWP] from political control and manipulation.” Sullivan, 98 Mont. at 443, 40 P.2d at 1000. The Comb’s construction of the federal and state restrictions on employees’ political activities supports the District Court’s decision to limit the phrase “political actions” to partisan politics. Limiting the statute’s reach to partisan politics also avoids the absurd result logically emanating from the broad definition of “political actions” urged by MSSA and the Dissent. Letasky, ¶ 11.
¶30 [1] We conclude that the statutory prohibition on using “official authority or influence ... for the purpose of coercing or influencing the political actions of any person or body,” under § 87-1-204, MCA, applies to FWP employees only in the partisan political sense. Sullivan, 98 Mont. at 443, 40 P.2d at 1001. The District Court properly determined that § 87-1-204, MCA, does not prohibit FWP employees from lobbying the Legislature or appearing before it as proponents or opponents of legislation. Farmers Co-op, ¶ 24.
¶31 We affirm.
JUSTICES LEAPHART, WARNER and RICE concur.