DA 19-0680

FILED

08/25/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0680

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 214

---

CITY OF BOZEMAN,

      Petitioner and Appellant,

  v.

MONTANA DEPARTMENT OF NATURAL RESOURCES
and CONSERVATION, an agency of the State of Montana,
and UTILITY SOLUTIONS, LLC.,

      Respondents and Appellees.

---

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-18-1323B
Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Peter G. Scott (argued), Peter G. Scott Law Offices, PLLC, Bozeman,
Montana

      For Appellees:

            Matthew W. Williams (argued), Williams & Jent, PLLP, Bozeman,
Montana (for Utility Solutions, LLC)

            Barbara Chillcott (argued), Cameron S. Boster, Special Assistant Attorneys
General, Helena, Montana (for Montana Department of Natural Resources
and Conservation)

---

Argued:  June 17, 2020
Submitted:  June 23, 2020
Decided:  August 25, 2020

Filed:

_____
                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The City of Bozeman (City) appeals from an order denying the City's petition for judicial review of the Final Order issued by the Department of Natural Resources and Conservation (DNRC), granting the application of Utility Solutions, LCC (Utility Solutions) to change water right No. 41H3010660 (Change Application), and denying the City's motion for summary judgment, entered by the Eighteenth Judicial District Court, Gallatin County. We affirm, and restate the issue as follows:

*Did the District Court err by holding the City's water facility plan did not qualify as an interest protectable from adverse effects under § 85-2-402(2)(a), MCA?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On March 27, 2017, Utility Solutions filed the Change Application with the DNRC for authorization to change the place of use of its Water Use Permit 41H30046241 (Water Use Permit). Utility Solutions described the proposed change in the Change Application, as follows:

> [t]here are many properties currently located in gaps between the current place of use for [the Water Use Permit] and the City of Belgrade, City of Bozeman and the Rae County Water and Sewer District services areas. The purpose of the proposed change is to extend the Place of Use of [the Water Use Permit] to provide these properties with the ability to either connect to the existing Four Corners Water and Sewer District or to provide their own public water system utilizing [the Water Use Permit].

¶3 On January 19, 2018, the DNRC issued a Preliminary Determination granting the change, upon its finding that Utility Solutions had satisfied the statutory criteria in its Change Application. Pursuant to § 85-2-307(2), MCA, the DNRC provided notice of its Preliminary Determination, and the City filed an objection pursuant to § 85-2-308, MCA.

2

The City argued that, contrary to the language in the Change Application, there were no "gaps" in service area, and the Application would adversely affect the City's possessory interest in the use of water in the area proposed by the Change Application (the Disputed Area), which interest was established by the City's 2009 adoption of a growth policy pursuant to § 76-1-101, MCA (Growth Policy), as expanded geographically by the City's adoption of an updated water facility plan in July 2017, several months after Utility Solutions filed the Change Application (Water Facility Plan).  Under the Water Facility Plan, the City's expanded planning boundary overlapped the area Utility Solutions sought to use under its Change Application.  The area of overlap is approximately 2,600 acres, and forms the geographical basis of the City's objection to the Change Application.  The source of the City's claimed water interest, pertinent to this dispute, is a contract with Middle Creek Water Users' Association and the DNRC (Middle Creek Contract or Contract).  The Contract concerned the sale of a water interest in the DNRC's Middle Creek Project, including a dam and reservoir on Hyalite Creek in Gallatin County, Montana.  The Contract provides that DNRC has "ma[de] a portion of the stored water available for use by the [City]" for "municipal consumption," but does not state the place of use of the City's shares or otherwise specify how they will be used or developed.  The DNRC acquired a Water Right Claim and Permit in conjunction with the Middle Creek Project prior to entering the Contract with the City.

¶4     The City and Utility Solutions filed cross motions for summary judgment with the DNRC hearing examiner, who granted the Change Application, reasoning that, under the

3

only statutory basis raised by the objection, the City did not hold a "*planned use[] or development[] for which a permit or certificate has been issued or for which a state water reservation had been issued* [,]" which the statute protects from adverse effect by a change application. (Emphasis and underlining in original.) The hearing examiner further concluded that, although the Change Application "results in a geographic overlap of the place of use with the City of Bozeman's Growth Policy and Water Facility Plan[,]" the overlap "[did] not result in an adverse effect as contemplated under § 85-2-402(2)(a)."

¶5 The City petitioned for judicial review of the DNRC's Final Order and the District Court, after hearing, affirmed the order, concluding the City's position that it held an interest subject to protection against adverse effect "would expand the definition of interests protected by the law. The [Montana Water Use Act] does not require a change applicant to prove lack of adverse effect for interests outside of the categories of interests enumerated in § 85-2-402(2)[,] MCA." Further, the District Court reasoned that, even if the City could demonstrate it possessed an interest protected by the statute, "it cannot demonstrate that the protections afforded by the [Montana Water Use Act] extend to prevent another water utility from securing an authorized place of use . . . that overlaps" with the City's claimed area.

¶6 The City appeals.

**STANDARD OF REVIEW**

¶7 This Court's review of an agency decision is governed by the Montana Administrative Procedure Act, Title 2, Chapter 4, MCA. Under § 2-4-704(2), MCA, a

4

court may reverse or modify the decision of an agency if substantial rights of the appellant have been prejudiced because:

> (a) the administrative findings, inferences, conclusions, or decisions are:
> (i) in violation of constitutional or statutory provisions;
> (ii) in excess of the statutory authority of the agency;
> (iii) made upon unlawful procedure;
> (iv) affected by other error of law;
> (v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
> (vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (b) findings of fact, upon issues essential to the decision, were not made although requested.

Likewise, this Court applies the same standard as the district court when reviewing an agency decision, determining "whether an agency's findings of fact are clearly erroneous and whether its conclusions of law were correct." *Roos v. Kircher Pub. Sch. Bd. of Trs.*, 2004 MT 48, ¶ 7, 320 Mont. 128, 86 P.3d 39 (citing *Baldwin v. Bd. of Chiropractors*, 2003 MT 306, ¶ 10, 318 Mont. 188, 79 P.3d 810).

## DISCUSSION

¶8    *Did the District Court err by holding the City's water facility plan did not qualify as an interest protectable from adverse effects under § 85-2-402(2)(a), MCA?*

¶9    The City argues the Change Application should not have been granted because Utility Solutions failed to prove the application would not adversely affect the City's planned use of water in what it describes as its "service area." Central to the City's position is the contention that its Water Facility Plan and Growth Policy, in conjunction with the water interest purchased under the Middle Creek Contract, qualify as a "planned use" protectable from adverse effects under § 85-2-402(2)(a), MCA. Utility Solutions and the

DNRC argue that under the statute's language, which is premised upon the prior appropriation doctrine, the City does not have a qualifying protectable interest, and therefore, the District Court did not err in affirming the Final Order.

¶10 Section 85-2-402(2)(a), MCA, provides, in pertinent part:

> (2) . . . the department shall approve a change in appropriation right if the appropriator proves by a preponderance of the evidence that the following criteria are met:
> (a) The proposed change in appropriation right will not adversely affect the use of the existing water rights of other persons or other perfected or planned uses or developments *for which a permit or certificate has been issued or for which a state water reservation has been issued under part 3.*

(Emphasis added.) This provision is part of the codification of prior appropriation principles established in Montana case law, including that an appropriator may not change or alter its use in a manner that adversely affects another's water right. *See Quigley v. McIntosh*, 110 Mont. 495, 505, 103 P.2d 1067, 1072 (1940) ([A]n appropriator "cannot subsequently extend the use of that water to additional lands . . . to the injury of subsequent appropriators."). The City correctly notes that "[n]o one disputes that the City adopted formal plans to use water in the Disputed Area[,]" but the dispositive question is whether the hearing examiner erred in determining the City did not possess a protectable interest under the statute that could be adversely affected by the Change Application, that is, that the City did not have a "planned use[] . . . for which a permit or certificate has been issued or for which a state water reservation has been issued under part 3." Section 85-2-402(2)(a), MCA.

6

¶11 "We interpret a statute first by looking to its plain language[,]" and will not look beyond the language if it is clear and unambiguous. *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003. "We construe a statute by reading and interpreting the statute as a whole, without isolating specific terms from the context in which they are used by the legislature. . . . Statutory construction should not lead to absurd results if a reasonable interpretation can avoid it." *City of Missoula v. Fox*, 2019 MT 250, ¶ 18, 397 Mont. 388, 450 P.3d 898 (quoting *Mont. Sports Shooting Ass'n*, ¶ 11) (internal quotations omitted).

¶12 Here, the statute's plain reading requires, for a "planned use" to be protectable from adverse effects, that a "permit," "certificate," or "state water reservation" must have been issued for that planned use. For proof, the City has offered its city growth planning documents and its purchase of water under the Middle Creek Contract.

¶13 Each of these statutory words are terms of art with specific definitions set forth in the Water Use Act. *See* §§ 85-2-102(6), (20), (24), MCA. All of the definitions describe a particular kind of authority for use of a water right, issued by the DNRC.[1] The definitions do not encompass a growth policy or water facility plan, and, consistent therewith, § 76-1-605(2), MCA, is notable in limiting the effect of a growth policy:

---

[1] Section 85-2-102(6), MCA: "'Certificate' means a certificate of water right issued by the department"; § 85-2-102(20), MCA: "'Permit' means the permit to appropriate issued by the department under 85-2-301 through 85-2-303 and 85-2-306 through 85-2-314"; § 85-2-102(24), MCA: "'State water reservation' means a water right created under state law after July 1, 1973, that reserves water for existing or future beneficial uses or that maintains a minimum flow, level, or quality of water throughout the year or at periods or for defined lengths of time."

> (a) A growth policy *is not a regulatory document and does not confer any authority to regulate that is not otherwise specifically authorized by law or regulations adopted pursuant to the law.*
> (b) A governing body may not withhold, deny, or impose conditions on any land use approval or other authority to act based solely on compliance with a growth policy adopted pursuant to this chapter.

(Emphasis added.) That a growth policy confers no regulatory authority unless authorized by law necessarily limits its application in regard to water rights, where no such authority is provided by the Water Use Act.

¶14 Turning to the Middle Creek Contract, while the City is correct that the DNRC holds a Provisional Permit and Water Right Claim in association with the Middle Creek Project, the City did not acquire the DNRC's Permit or Claim by way of the Contract. Rather, the DNRC merely agreed, under Section 1 of the Contract, to "make a portion of the stored water available for use by the [City]." Section 7 of the Contract expressly provides that "[a]ll right, title and interest in and to the associated water rights shall be and remain in the Department. The [City] shall acquire no right, title or interest in the Project or the water rights." Finally, as the DNRC's Final Order explains, the Contract does not identify any planned use or place of use for the water, but only indicates it will be "released for municipal consumption." Therefore, the Contract does not rise to a protectable interest as defined by § 85-2-402(2)(a), MCA. We conclude the District Court did not err in affirming the DNRC's determination that Utility Solutions carried its burden to prove the City did not have an interest protectable from adverse effects as defined in § 85-2-402(2)(a), MCA, and therefore, properly granted the Change Application.

8

¶15    Because we reach this conclusion, we need not address whether the Change Application's approval would have adversely affected the City's interest. Likewise, the City's repeated contention that the DNRC erred in finding that there was a "service gap," is now a non-issue, because even if the DNRC had assumed there was a gap between the City's area of planned use and the area Utility Solutions sought to use under the Change Application, the City nonetheless had no protectable interest for which Utility Solutions had to prove the lack of adverse effect.[2]

¶16    Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON

---

[2] We note, however, the record demonstrates that both the DNRC and the District Court were aware that there was not an area "gap," as originally stated in the Change Application, and that the City planned to service some of the same locations as Utility Solutions. For example, the DNRC's Final Order noted that the Change Application "results in a geographic overlap of the place of use with the City of Bozeman's Growth Policy and Water Facility Plan[,]" but that the overlap "[did] not result in an adverse effect as contemplated under § 85-2-402(a)." Likewise, the District Court acknowledged there was a "2,600-acre overlap between the City's 2017 Water Facility Plan boundary and the authorized place of use for Utility Solutions' Provisional Permit."

9