FILED

09/17/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0495

DA 23-0495

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 210

TOWN OF KEVIN,

     Petitioner and Appellant,

  v.

MONTANA DEPARTMENT OF NATURAL
RESOURCES AND CONSERVATION,

     Respondent and Appellee,

CITY OF SHELBY,

     Applicant and Appellee.

APPEAL FROM:    Montana Water Court, Case No. MAPA- 0001-WC-2022
                 Honorable Stephen R. Brown, Associate Water Judge

COUNSEL OF RECORD:

       For Appellant:

       Jack G. Connors, Doney Crowley P.C., Helena, Montana

      For Appellee Department of Natural Resources and Conservation:

       Brian Bramblett, Molly Kelly, Department of Natural Resources and
       Conservation, Helena, Montana

      For City of Shelby:

       Christopher T. Scoones, Scoones Law PLLC, Bozeman, Montana

                 Submitted on Briefs:  June 26, 2024
                         Decided:  September 17, 2024

Filed:

_____
               Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    The Water Court denied the Town of Kevin's (Kevin) petition for judicial review of the Montana Department of Natural Resources and Conservation (DNRC) decisions to approve an application submitted by the City of Shelby (Shelby) for a beneficial water use permit and two water right change of use applications. Kevin appeals.

¶2    We affirm in part, reverse in part, and remand with direction to return the matter to DNRC.

¶3    We restate the sole issue on appeal as follows:

*Issue: Whether DNRC erred in approving Shelby's permit and change of use applications.*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4    Shelby operates a municipal water system in Toole County that supplies eight service areas: Shelby South, Prison, Humic facility, and the communities of Devon, Dunkirk, Ethridge, Big Rose Colony, and the City of Cut Bank. The system is fed by thirteen shallow wells near the Marias River. In 2017, DNRC approved changes allowing Shelby to temporarily service these areas until the North Central Montana Regional Water system becomes operational.

¶5    In July 2019, Shelby submitted two applications to expand its then-authorized service area to include Oilmont, Nine Mile, and Galata. Shelby additionally applied for a new beneficial water use permit to increase the volume of groundwater produced from its wells.

2

¶6 On December 21, 2020, DNRC issued preliminary determinations granting approval of Shelby's new beneficial use permit and change of use applications. Kevin filed objections.

¶7 The case was assigned to a hearing examiner. Kevin moved for summary judgment regarding the place of use element in Shelby's applications, which the hearing examiner denied on November 3, 2021.

¶8 On March 30, 2022, a separate hearing examiner approved Shelby's permit and change applications.

¶9 On April 28, 2022, Kevin petitioned the Water Court for judicial review pursuant to § 2-4-604(5), MCA, asserting that DNRC erred in its interpretation of the law, and that Shelby's permit and change applications did not satisfy the statutory criteria.

¶10 On April 7, 2023, the Water Court denied Kevin's petition.

¶11 Kevin appeals the Water Court's Order on Petition for Judicial Review.

**STANDARD OF REVIEW**

¶12 Agency decisions are reviewed under the Montana Administrative Procedure Act, Title 2, chapter 4, MCA. Section 2-4-704(2), MCA, enumerates scenarios under which an agency decision may be reversed or modified for substantially prejudicing a claimant's rights:

> (a )the administrative findings, inferences, conclusions, or decisions are:
> (i) in violation of constitutional or statutory provisions;
> (ii)in excess of the statutory authority of the agency;
> (iii) made upon unlawful procedure;
> (iv) affected by other error of law;
> (v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;

3

(vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(b) findings of fact, upon issues essential to the decision, were not made although requested.

Accordingly, an agency's findings of fact are reviewed for clear error, and its conclusions of law for correctness. *City of Bozeman v. Mont. Dep't of Nat. Res. & Conservation*, 2020 MT 214, ¶ 7, 401 Mont. 135, 471 P.3d 46 (citations omitted).

¶13 We will generally defer to an agency's longstanding interpretation of statute or rule when it has stood unchallenged for a considerable length of time, "thereby creating reliance in the public and those having an interest in the interpretation of the law." *Mont. Trout Unlimited v. Mont. Dep't of Nat. Res. & Conservation*, 2006 MT 72, ¶ 37, 331 Mont. 483, 133 P.3d 224 (citing *Mont. Power Co. v. Mont. Pub. Servs. Comm'n*, 2001 MT 102, ¶ 24, 305 Mont. 260, 26 P.3d 91). Agencies are owed "respectful consideration" in their interpretations, but we are more deferential to an agency's interpretation of its own rule than we are a statute. *Mont. Env't Info. Ctr. v. Mont. Dep't of Env't Quality*, 2019 MT 213, ¶ 24 n. 9, 397 Mont. 161, 451 P.3d 493 (citation omitted). We will not defer to an agency's interpretation of a statute when it is plainly inconsistent with the law. *Mont. Env't Info. Ctr.,* ¶ 24 n. 9 (citation omitted). If the statutory language is unambiguous, then the statute speaks for itself. *Mont. Power Co.*, ¶¶ 25-26.

## DISCUSSION

¶14 Water rights in Montana were historically perfected and maintained by taking water within the public domain and putting it to beneficial use. *Kelly v. Teton Prairie LLC*, 2016 MT 179, ¶ 11, 384 Mont. 174, 376 P.3d 143 (citation omitted). We have long held that

4

when a water right is acquired to supply water to another, the "beneficial use" occurs when the appropriator makes the water available, not when it is actually used. *Bailey v. Tintinger*, 45 Mont. 154, 173-74, 122 P. 575, 582 (1912) ("Actual use [is] not a prerequisite to the creation of [a] right . . . actual diversion [is] enough."); *Curry v. Pondera Cnty. Canal & Reservoir Co.*, 2016 MT 77, ¶ 31, 383 Mont. 93, 370 P.3d 440; *see also Bureau of Land Mgmt. v. Barthelmess Ranch Corp.*, 2016 MT 348, ¶¶ 12, 34, 386 Mont. 121, 386 P.3d 952. Under the Montana Water Use Act (MWUA), a municipal use is one such "beneficial use." Section 85-2-102(5)(a), MCA.

¶15 Municipalities are required to follow the same permitting and change of use processes under the MWUA as individual rights-holders. Section 85-2-302(1), MCA, mandates that water users must apply to DNRC for new water use permits and for any change of use. Section 85-2-311, MCA (permit statute), establishes the criteria that an applicant must prove to obtain a new permit, and § 85-2-402, MCA (change statute), provides similar criteria for any change of use, including the purpose, point and period of diversion, place of use, flow rate, volume, or priority date. *See* § 85-2-234(6), MCA. Sections 85-2-311(1)(e) and -402(2)(d), MCA, require that the applicant have a "possessory interest or the written consent of the person with the possessory interest in the property where the water is to be put to beneficial use."

¶16 Section 85-2-302(2)(b), MCA, additionally directs DNRC to "adopt rules . . . that are necessary to determine whether or not an application is correct and complete . . . ." Accordingly, DNRC adopted Admin. R. M. 36.12.1801 (2004) and 36.12.1802 (2004), which specifically describe what a permit or change application must contain in order to

5

obtain DNRC's approval. A permit applicant must demonstrate, for example, that the water will be put to a beneficial use and that there is a corresponding "reasonable need" for the requested flow rate and volume. Admin. R. M. 36.12.1801 (2023). An applicant must also present a signed affidavit demonstrating a possessory interest or written consent "except in cases of an instream flow application, or where the application is for sale, rental, distribution, or is a municipal use . . . and it is clear that the ultimate user will not accept the water supply without consenting to the use of water on the user's place of use. Admin. R. M. 36.12.1802(1)(b) (2004).

¶17 An applicant bears the burden to prove, on a preponderance of the evidence, that its permit and/or change applications satisfy the applicable criteria under §§ 85-2-311 and -402, MCA. After DNRC has preliminarily approved a permit and/or change application, finding that the respective criteria are satisfied, the burden shifts to the objector to demonstrate that they are not. *Mont. Env't Info. Ctr. v. Mont. Dep't of Env't Quality*, 2005 MT 96, ¶ 14, 112 P.3d 964 (2005) (citing § 26-1-401, MCA).

¶18 In approving Shelby's permit and change of use applications, the DNRC hearing examiner concluded that Shelby satisfied the statutory criteria on a preponderance of the evidence based on service agreements it entered into with communities in its service area. Notably, the preliminary determinations underlying the hearing examiner's approval recognized that the claim file did not include service agreements corresponding to every community within Shelby's service area.[1] Nevertheless, the hearing examiner concluded

---

[1] The record does not contain service agreements for Dunkirk, City of Cut Bank, Oilmont, Galata, or Nine Mile. Shelby Mayor Gary McDermott provided oral testimony that service agreements

6

that the "totality of the evidence" indicated Shelby would ultimately have consent from each end user on the system, thus the absence of written agreements was acceptable.

¶19    In reaching his conclusions of law, the hearing examiner reasoned that service agreements constitute "written consent" under the permit and change statutes, and Shelby was not required to prove that every landowner within the service area consented to its proposed use. Further, he explained that DNRC interprets the permit and change statutes under Admin. R. M. 36.12.1802(1)(b), which reflects the practical reality that an individual landowner impliedly consents to receiving municipal supply if they use the water despite having a right to refuse it. As the hearing examiner put it, a municipal supplier may not "force delivery of water on the unwilling."

¶20    In denying Kevin's petition for judicial review, the Water Court affirmed DNRC's conclusions as to both DNRC's statutory interpretation and its application of Admin. R. M. 36.12.1802. The Water Court noted that "Kevin does not argue the service agreements are missing or are deficient in any way," and determined "Kevin was given the opportunity at the hearing to challenge the findings as to the water service agreements, and the Final Order concluded Kevin failed to do so."

¶21    On appeal, Kevin argues that DNRC's application of Admin. R. M. 36.12.1802 unlawfully exempts municipalities from satisfying the statutory criteria under §§ 85-2-311(1)(e) and -402(2)(d), MCA, because service agreements do not reflect consent

exist with the City of Cut Bank, Oilmont, and the North Central Montana Regional Water Authority, which will supply Nine Mile. Based on our review of the record, that means there is no evidence supporting an agreement with at least one of the three new proposed places of use: Galata.

7

from every landowner within a service area. Alternatively, Kevin contends that Shelby failed to provide evidence of a service agreement with Galata and thus failed to demonstrate written consent even under DNRC's unlawful interpretation of the law and application of its Rule. Finally, Kevin avers that the concept of a service area was "abrogated" by the passage of the MWUA, and Shelby was thus required to demonstrate the consent of each end user within its place of use for its post-1973 water rights.[2]

¶22 DNRC does not dispute the absence of a service agreement with Galata and argues that the "practical reality" of municipal water rights favors an application of Admin. R. M. 36.12.1802 such that it does not need one.

¶23 Shelby, for its part, contends that we do not need to address Admin. R. M. 36.12.1802 or its service agreements at all because a municipality need only demonstrate that it owns the delivery system it uses to supply water in order to show possessory interest. DNRC asks us not to weigh this argument because it exceeds the scope of the hearing examiner's determination. Rather, DNRC contends that the hearing examiner properly determined Shelby satisfied the statutory criteria based on the service agreements and the fact that Shelby cannot force end users to use its water.

¶24 *Issue: Whether DNRC erred in approving Shelby's permit and change of use applications.*

¶25 At the outset, we decline to address Shelby's argument that it has "possessory interest" in the entire proposed service area because it owns its delivery system. Sections

---

[2] This argument was raised for the first time on appeal; thus, we do not consider its merits here. *See State v. Sedler*, 2020 MT 248, ¶ 10, 401 Mont. 437, 473 P.3d 406 (citing *State v. Akers*, 2017 MT 311, ¶ 10, 389 Mont. 531, 408 P.3d 142).

85-2-311(1)(e), -402(2)(d), MCA.  Generally, we will not consider arguments raised for the first time on appeal.  *Sedler*, ¶ 10 (citing *Akers*, ¶ 10).  While we have previously held that the "place of use" applicable to water supply entities is where the water is made available,[3] the matter is not properly before the Court here.

¶26    Absent "possessory interest," we are thus tasked with ascertaining what constitutes "written consent" in municipal service areas, and whether DNRC erred when it determined that Shelby met its burden to demonstrate "written consent" below.    Sections 85-2-311(1)(e), -402(2)(d), MCA.

¶27    "Our purpose in construing a statute is to ascertain the legislative intent and give effect to the legislative will."  *State v. Heath*, 2004 MT 126, ¶ 24, 321 Mont. 280, 90 P.3d 426 (quotation omitted).  We will not insert what was omitted or omit what was inserted.  Section 1-2-101, MCA.

¶28    The permit and change statutes unambiguously require a new permit or change of use applicant to demonstrate a "possessory interest or the *written consent* of the person with the possessory interest in the property where the water is to be put to beneficial use . . . ."  Sections 85-2-311(1)(e), -402(2)(d), MCA (emphasis added).  The statutes clearly require that Shelby either demonstrate a possessory interest of its own or obtain the *written consent* from end users for a permit or change of use.  They do not, however, provide municipalities an exemption from the written consent requirement even when "It is clear that the ultimate user will not accept the supply without consenting to the use of

---

[3] *See generally Curry*; *Barthelmess*; *Bailey*.

water." Admin. R. M. 36.12.1802(1)(b). The Legislature would have used more precise language if it had intended to accommodate such a form of implied consent.

¶29 We agree with DNRC that the practical implications of requiring every landowner's written consent would be needlessly burdensome for the administration of municipal water rights. While Kevin is correct that this reason alone is legally insufficient, it raises the only remaining question: whether service agreements satisfy "written consent" under §§ 85-2-311(1)(e) and -402(2)(d), MCA.

¶30 The Legislature expressly recognized municipal use as a "beneficial use." Section 85-2-102(5)(a), MCA. Relatedly, we have upheld § 85-2-227, MCA, as lawfully allowing municipalities to plan for future needs and use. *City of Helena v. Community of Rimini*, 2017 MT 145, ¶ 38, 388 Mont. 1, 397 P.3d 1. Furthermore, municipalities have broad statutory authority to adopt rules governing the operation and regulation of public utilities. *Gregg v. Whitefish City Council*, 2004 MT 262, ¶ 36, 323 Mont. 109, 99 P.3d 151 (holding that a municipality may require consent to annexation in order to provide continued utility services). Clearly, the Legislature contemplated that a municipal water supplier must have corresponding authority to supply wanting homeowners within its service area even if there are also individuals who do not wish to receive utility services. The Legislature did not intend to require a municipality to obtain the consent of every single resident, because consent from an end user is implied when they subscribe to and pay for services. "Statutory construction should not lead to absurd results if a reasonable interpretation can avoid it." *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003 (citations omitted).

¶31 DNRC's application of Admin. R. M. 36.12.1802 to service agreements that Shelby has with communities inside its proposed service area is a reasonable interpretation of the law. DNRC is accordingly owed deference to the extent that it applies this interpretation consistently. *City of Bozeman*, ¶ 3; *Lohmeier v. Dep't of Nat. Res. & Conservation*, 2008 MT 307, ¶¶ 6, 7, 20, 346 Mont. 23, 192 P.3d 1137; *Mont. Trout Unlimited*, ¶ 37.

¶32 Kevin correctly notes, however, that the record does not contain evidence that a service agreement encompassing Galata exists. Nevertheless, the Water Court took the existence of all of Shelby's requisite service agreements for granted when it concluded that "Kevin was given the opportunity at the hearing to challenge the findings as to the water service agreements, and [DNRC's] Final Order concluded Kevin failed to do so." On the contrary, Kevin correctly identified at least one missing service agreement, and the DNRC hearing examiner denied its summary judgment motion anyway.

¶33 To the extent that DNRC approved a change of use for communities that are not encompassed by a service agreement, the agency's interpretation of the permit and change statutes was error. We agree with Kevin that to hold otherwise would create an unlawful exception to the statutory criteria.

**CONCLUSION**

¶34 DNRC correctly determined that Shelby satisfied the permit and change criteria via service agreements with each community in its service area, except for Galata. We reverse the Water Court in part and remand with direction to return the matter to DNRC to determine whether all required service agreements exist and to issue an order consistent with this Opinion.

11

/S/ MIKE McGRATH

We Concur:

/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE